IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SAMMIE HUNT, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 13-00241-KD-M |
| | ) |
| BIBB COUNTY PROPERTIES, LLC, | ) |
|     Defendant. | ) |

**ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment on Plaintiff's claims of race discrimination, hostile work environment and retaliation (Docs. 38-39), Plaintiff's Response (Doc. 49), and Defendant's Reply (Doc. 53). For the reasons stated infra, the motion is GRANTED.

**I.    Findings of Fact[1]**

Plaintiff Sammie Hunt ("Hunt") is an African-American who was employed by Defendant Bibb County Properties, LLC ("Bibb"), a sawmill and mulch processing plant in Grove Hill, Alabama. The Bibb plant was open Monday-Thursday for normal hours of operation, but most every Friday also operated as an overtime day. (Doc. 39-1 (Dep. Zetino at 17, 26-27); Doc. 39-2 at 1 (Aff. Zetino)).

In August 2011, Jose Victor Zetino ("Zetino"), who is Hispanic, became the Grove Hill Plant Manager. (Doc. 39-1 at 2 (Dep. Zetino at 6-7)). Zetino was tasked with increasing production. (Id. at 3, 12 (Dep. Zetino at 10, 45); Doc. 39-2 at 1 (Aff. Zetino)). As Plant Manger,

---

[1] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

1

Zetino determined when/whether the plant would operate overtime, on Friday and Saturday, departing from the Monday-Thursday normally operating days, as well as assigned overtime in general. (Id. (Aff. Zetino)). According to Zetino, performance and reliability were the two biggest criteria for assigning overtime. (Doc. 39-1 at 17 (Dep. Zetino at 83-84)).

On November 14, 2011, Hunt was hired by Bibb; he started on the knuckleboom loader and was then moved to an older front-end loader (which had a broken air conditioner). (Doc. 39-4 at 3, 5 (Dep. Hunt at 18-20, 27, 34); Doc. 39 at 7 at ¶24)). Hunt sometimes worked on the new loader when he helped with mulching before normal morning operating hours. (Id. at 5 (Dep. Hunt at 27-28)). While employed, Hunt also operated a Kubota tractor, drove a truck, and worked on "the green chain" for a few weeks. (Id. at 6 (Dep. Hunt at 32-34)). According to Hunt, the green chain is physically the most difficult job at the plant and if the machine he was working on broke down, he would be sent to work on the green chain until it was fixed, and the same happened for other African American workers; however, "white and hispanic workers were usually given a break when their machines broke down." (Doc. 49-1 at 18 at ¶3 (Aff. Hunt)). On May 2, 2012, Hunt voluntarily quit because of what he describes as discrimination due to his loader's air conditioner never being fixed even though Hispanics workers had theirs fixed, and Zetino never giving him a raise despite one being repeatedly requested. (Doc. 39-4 at 7, 14, 17-18, 20 (Dep. Hunt at 38, 64, 79-80, 84-86, 90-91)). During his less than 6 months of employment, Hunt worked 404.31 hours of overtime primarily on the front-end loader, and general cleaning. (Id. at 14 (Dep. Hunt at 62); Doc. 39-3 at 1 at ¶10 (Aff. Fournier)).

Concerning hostile work environment, Hunt testified that Zetino reprimanded him about "feeding" the mill, and one day told him he would be fired if he was the worker who had hit a

wall at the plant.  (Doc. 39-4 at 9 (Dep. Hunt at 42-43)).  Additionally, once Zetino told Hunt to be more careful and watch what he was doing after he backed up the loader and hit some logs, denting the loader.  (Id. at 9-10 (Dep. Hunt at 44-45)).  Zetino never made any racial comments or slurs to Hunt or anyone else. (Id. at 10-11 (Dep. Hunt at 46, 52)).  Hunt told Zetino that he thought a coworker "Ron" was getting away with more stuff and would get off easy because he was white.  (Id. at 13 (Dep. Hunt at 59)).  Hunt believes Zetino was harder on the African American workers than the Hispanics, letting Hispanic employees "goof off" when things needed to be done and Zetino would not "get on them."  (Id. at 15-17 (Dep. Hunt at 72-78)).  Hunt heard Zetino say "my guys" very regularly, and sometimes said "my Mexican guys" when referring to a group of workers at the plant. (Doc. 49-1 at 18 at ¶2 (Aff. Hunt)).

Hunt never complained to Zetino about discrimination, just about working him too hard, making him do too many things.  (Doc. 39-4 at 13 (Dep. Hunt at 58-59)).

Regarding overtime, Hunt testified that he asked Zetino for overtime work 2-3 times per week, every week.  (Doc. 39-4 at 20 (Dep. Hunt at 92)).  Hunt testified that several times, another manager (Andy) would tell him that he could work overtime on Saturday but then later Zetino would tell him "we don't need you tomorrow" and so he would not work; on Monday his co-workers would ask where he had been telling him "everybody else came."  (Id. at 6, 11-12, 14 (Dep. Hunt at 30-31, 50-51, 53, 62-63)).  Zetino would tell Hunt when he asked to work overtime on Saturdays, "I got my guy. They going to come in. They going to clean up. I ain't going to need all of y'all."  (Id. at 10-12 (Dep. Hunt at 46, 50-51, 53)).  For Hunt, this was the "[o]nly problem I really had" with Zetino.  (Id. at 11 (Dep. Hunt at 50)).  He personally thought

3

this was discrimination. (Id. at 12 (Dep. Hunt at 53)). "[H]e wouldn't let us make no overtime [on Saturdays] when we had the chance to. I mean, we made some [overtime] but it was a lot of time we could have made overtime and he wouldn't let us." (Id. at 13 (Dep. Hunt at 57-58)). Hunt testified however, that "a lot of time when we knock off at four, he let me work till five or six. But then when we leave…the Mexicans will still be there working…work ten, eleven o'clock at night[]" – "[c]leaning up there…." (Doc. 39-4 at 13 (Dep. Hunt at 58)). "[H]e wouldn't let me get enough overtime[.]" (Id. (Dep. Hunt at 60)). See also Doc. 49-1 at 18 at ¶2, 4-5 (Aff. Hunt)). Hunt never turned down overtime and always showed up for overtime work on Saturdays when he was told to be at work. (Doc. 39-4 at 15 (Dep. Hunt at 71-72)).

As for retaliation, Hunt testified that he alleges retaliation because he complained to another supervisor about Zetino having promised him a raise but not receiving one, and that "they was putting too much work on me and that the other loader should have been helping me out more[;]" he was told it would be looked into but the supervisor never got back to Hunt. (Doc. 39-4 at 19 (Dep. Hunt at 87-88)).

On April 25, 2013, Hunt sued Bibb for Title VII/Section 1981 violations for race discrimination (disparate treatment in connection with overtime opportunities), hostile work environment based on race, and retaliation -- claiming that Bibb discriminates against African-Americans in favor of Hispanic or Caucasian employees. (Doc. 1). The relief requested includes a declaratory judgment, a permanent injunction, back/front pay, punitive, compensatory damages and/or nominal damages, benefits, costs, fees and expenses. (Id. at 9).

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.
R. CIV. P. 56(a) (Dec. 2010). Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of

5

weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992) (internal citations and quotations omitted).

## III. Conclusions of Law

At the outset, the parties agree that Hunt has exhausted his administrative remedies and thus satisfied a condition precedent to filing suit. (Doc. 1 at 1-2 at ¶3; Doc. 5 at 1).[2]

Hunt's disparate treatment, hostile work environment, and retaliation claims are based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Because Title VII and Section 1981 have the same requirements of proof, Hunt's claims are analyzed under the same framework. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

### A. Disparate Treatment -Title VII/Section 1981 Race Discrimination

While the Complaint is not a model of clarity, it appears that Hunt's race discrimination claim is based on being denied *all* the overtime he wanted, as he states in the complaint: "Hispanic and white counterparts were allowed to work substantially more overtime."[3] (Doc. 1 at 3 at ¶18). The Court considers this race discrimination claim as one for disparate treatment in connection with overtime opportunities. However, Hunt worked over 404 overtime hours (before operating hours, "after hours", on Friday, and on some Saturdays). Thus, this is not a

---

[2] The parties have not submitted the EEOC Charge. The Court thus presumes the parties are in agreement as to the propriety of the claims before the Court as they relate to the allegations contained in the Charge.

[3] Any race claims based on general treatment and reprimands (Doc. 1 at 3 at ¶17) appear to have been abandoned.

6

claim for a denial of any/all overtime, but a claim for denial of *some* of his overtime requests, primarily to work *every* Saturday (*i.e.*, "I didn't get as much overtime as I wanted").

Hunt may support his claims with direct evidence, circumstantial evidence, or statistical proof. Rioux v. City of Atlanta, Ga. 520 F.3d 1269, 1274 (11th Cir. 2008). Direct evidence of discrimination is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004). Specifically, direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption. Taylor v. Runyon, 175 F.3d 861, 867 (11th Cir. 1999); Jones v. Bessemer Carraway Med. Ctr., 151 F.3d 1321, 1323 n. 11 (11th Cir. 1998); Burrell v. Board of Trustees of Ga. Military College, 125 F.3d 1390, 1393 (11th Cir. 1997). Direct evidence consists of "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [race]." Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008). As enunciated by this Court in Ferrell v. Masland Carpets, Inc., 97 F. Supp.2d 1114, 1123 (S.D. Ala. 2000):

> "It is a rare case, however, where there exists actual direct evidence of discrimination." *Copley v. Bax Global, Inc.,* 80 F.Supp.2d 1342, 1348 (S.D. Fla. 2000). The reason that "true" direct evidence is the exception rather than the rule is that courts have found "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate" as constituting direct evidence of discrimination. *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1223 (11th Cir.1993)… there must be a direct correlation between the adverse employment action and the discriminatory comment for such a statement to constitute direct evidence.

Moreover, evidence that merely suggests a discriminatory motive is, by definition, circumstantial evidence. Burrell, 125 F.3d at 1393-1394. "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination."

7

Standard 161 F.3d at 1330. "To be direct evidence, the remark must indicate that the employment decision in question was motivated by race." Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227-1228 (11th Cir. 2002).

Hunt contends that he has direct evidence[4] of discrimination per the "mountain of evidence" in the co-plaintiff's affidavits. (Doc. 49 at 8). Hunt's "direct evidence" consists of his and other co-plaintiffs' statements that they heard Zetino say "you guys", my "Hispanic guys" or "my Mexican guys" in reference to assigning overtime. (Doc. 49; Doc. 49-1 at 12-17, 19)). However, this is not direct evidence of race discrimination. While Hunt might prevail in convincing a jury that these comments indicated a preference for a certain group of Hispanic employees, such a conclusion can only be made by inference or presumption. In sum, Zetino's comments are at best circumstantial evidence that he favored a certain group of Hispanic employees. As explained *supra*, direct evidence does not allow for inferential leaps.[5]

---

[4] Despite Hunt contention (Doc. 49), which relies upon and quotes Judge Tjoflat's opinion in Wright v. Corp, 187 F.3d 1287 (11th Cir. 1999), this Court does not agree that the Eleventh Circuit has adopted a broader definition of direct evidence based on a "preponderance" standard. Rather, the undersigned agrees with the conclusion in Ferrell, 97 F. Supp.2d at 1123:

> The court disagrees. Judge Tjoflat's definition of direct evidence "is mere obiter dictum, as it was not necessary to the resolution of the case, and neither of the two other members of the panel joined that portion of the opinion." *Copley v. Bax Global, Inc.,* 80 F.Supp.2d 1342, 1348 (S.D.Fla.2000). Indeed, as the Copley court observes, the Eleventh Circuit has not since applied Judge Tjoflat's definition of direct evidence. *See Damon v. Fleming Supermarkets of Fla.,* 196 F.3d 1354, 1358–59 (11th Cir.1999). *See also Beaver v. Rayonier, Inc.*, 200 F.3d 723, 729–30 (11th Cir.1999). Accordingly, the court declines to adopt the definition of direct evidence propounded by Judge Tjoflat in Wright and urged by Ferrell in this case.

See also East v. Clayton Cty., Ga., 436 Fed. Appx. 904, 910 (11th Cir. 2011) (noting that even though no published opinion had overruled Wright, no published opinion directly applied that standard since Wright issued in 1999); Kilpatrick v. Tyson Foods, Inc., 268 Fed. Appx. 860, 862 (11th Cir. 2008) (noting that neither of the other 2 members of the panel joined in Judge Tjoflat's opinion and stating that "our case law, both before and since *Wright*, has used the standard…that direct evidence…means 'evidence which if believed, proves existence of fact in issue without inference or presumption'").

[5] *Accord* Burrell, 125 F.3d at 1393–1394 (a statement that merely suggests, but does not prove, a

8

Where there is only circumstantial evidence, as in this case, courts apply the framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000). Under McDonnell Douglas, the plaintiff has the initial burden of establishing a prima facie case of race discrimination. Id. Thus, the plaintiff must establish that: 1) he belongs to a racial minority; 2) he was subjected to adverse job action; 3) his employer treated similarly situated employees outside his classification more favorably; and 4) he was qualified to do the job. Holifield v. Reno, 115 F.3d 1555, 1561–1562 (11th Cir. 1997).

Further, in Sims v. MVM, Inc., 704 F.3d 1327, 1332-1333 (11th Cir. 2013), the Eleventh Circuit clarified that the McDonnell Douglas framework is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case. See Smith, 644 F.3d at 1328. "The plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." Id. A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker. Id. See generally Hamilton v. Southland Christian School, Inc., 680 F.3d 1316, 1320 (11th Cir. 2012).

As previously stated, plaintiff must show that his employer treated similarly situated employees outside his classification more favorably. The employee identified as a comparator "must be similarly situated in all relevant respects." Wilson, 376 F.3d at 1091. See also e.g., Drake–Sims v. Burlington Coat Factory Warehouse of Ala., Inc., 330 Fed. Appx. 795, 803 (11th Cir. 2009). It is necessary that a comparator must be "nearly identical" to the plaintiff "to prevent

---

discriminatory motive is circumstantial evidence by definition).

courts from second-guessing a reasonable decision by the employer." Wilson, 376 F.3d at 1091.[6]
See also e.g., Head v. Pitts Enterp , Inc., 2010 WL 2773376, *13 (M.D. Ala. Jul. 14, 2010); Drake–Sims, 380 Fed. Appx. at 803; Sylva–Kalonji v. Board of School Comm'rs of Mobile Cty., 2009 WL 1418808, *5–6 (S.D. Ala. May 20, 2009); Hill v. Emory Univ., 346 Fed. Appx. 390, 395 (11th Cir. 2009); Beard v. 84 Lumber Co., 206 Fed. Appx. 852, 857 (11th Cir. 2006) (finding the plaintiff and a proposed comparator had different numbers of years of experiences such that they were not similarly situated in all relevant respects).

Hunt's race discrimination claim is premised on the fact that he did not receive as much overtime as he would have liked. Hunt does not point to a specific comparative employee, but rather simply points to all the Hispanics who received more overtime than he did. This is insufficient to sustain his burden. The Court can not even determine whether the comparators held similar jobs, much less whether they were similarly situated.

Hunt primarily relies on "statistical data" in his attempt to establish a prima facie case of discrimination and presumably to show pre-text. In individual Title VII claims, statistical evidence is "relevant and important" but cannot alone sustain a case of individual discrimination. Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1131 (11th Cir. 1984). Hunt's claims are not part of a class suit alleging a "pattern or practice" of discrimination.[7] However, "[e]ven

---

[6] The Eleventh Circuit held in Cuevas v. American Exp. Travel Related Services Co., Inc., 256 Fed. Appx. 241, 243 (11th Cir. 2007) that "[a]lthough the 'nearly identical' misconduct requirement was called into question by Alexander v. Fulton County, Ga., 207 F.3d 1303, 1334 (11thCir. 2000), we are 'bound to follow *Maniccia's* 'nearly identical' standard rather than the standard articulated in *Alexander* because when a later panel decision contradicts an earlier one, the earlier panel decision controls.'"

[7] To the extent this is a belated attempt by Hunt to assert a disparate impact claim, as statistical disparity data is required in such claims, such attempt is improper. See, e.g., Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1314 (11th Cir. 2004) (explaining that the liberal pleading standard under Fed.R.Civ.P. 8(a)(2) does not afford plaintiffs with an opportunity to raise new claims at summary judgment); Huddleston v. Sunshine Mills, Inc., 965 F.

10

though a suit seeks only individual relief for an individual instance of discrimination, and is not a "pattern or practice" suit by the government or a class action, the past history of [employment practices] is surely relevant information." Burns v. Thiokol Chemical Corp., 483 F.2d 300, 306 (5th Cir. 1973). As the Fifth Circuit explained over forty years ago, "'[i]n the problem of racial discrimination, statistics often tell much, and Courts listen.' Our wide experience with cases involving racial discrimination in education, employment, and other segments of society have led us to rely heavily in Title VII cases on the empirical data which show an employer's overall pattern of conduct in determining whether he has discriminated against particular individuals or a class as a whole." Id. at 305 (citation omitted). "Statistical evidence is an appropriate method for demonstrating both a prima facie case of discrimination and pretext…. Statistics…, however, without an analytic foundation, are virtually meaningless." Brown v. American Honda Motor Co., Inc., 939 F.2d 946, 952 (11th Cir. 1991).

Hunt has submitted the employee data for Bibb County Properties over the course of one year, July 2011-2012. (Doc. 49-1 at 1-6). Hunt also submitted summaries/tables, presumably prepared by Hunt's counsel, that break down the employees by race and the number of overtime

---

Supp.2d 1298, 1310 (N.D. Ala. 2013) (concluding that the court would not consider a plaintiff's disparate impact theory of discrimination on summary judgment because he raised it for the first time in his response brief); Smith v. Horner, 839 F.2d 1530, 1534–35 (11th Cir.1988) (holding that the district court was not required to analyze the facts under a disparate impact theory when plaintiff made no mention of that theory in pre-trial and post-trial filings, and only barely alluded to the theory during trial); GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1258 n.27 (11th Cir. 2012) (providing "[i]t is well-settled in this circuit that a plaintiff may not amend the complaint through argument at the summary judgment phase of proceedings."); King v. ST Aerospace Mobile, Inc., 2013 WL 2635926, 8 (S.D. Ala. June 11, 2013) (noting that plaintiff cannot amend the pleading via summary judgment to add new causes of action); Godfrey v. Nationwide Vinyl Siding & Home Imp., LLC, 2012 WL 6569292, *12 n.23 (S.D. Ala. Dec. 14, 2012) ("Plaintiffs cannot use their summary judgment brief as a de facto amendment to their pleadings." See also Criner v. Texas―New Mexico Power Co., 470 Fed. Appx 364, 371 (5th Cir. 2012) ("[W]e hold that [Plaintiff] waived her disparate impact claims by presenting them for the first time in her response to a motion for summary judgment.")

11

hours received. (Doc. 49-1 at 7-11). Counsel then provides his own analysis of the statistics, concluding that eighty percent (80%) of the Hispanic workers were in the top twenty-nine percent (29%) of average weekly overtime earners. This conclusion is virtually meaningless. Hunt's statistical evidence did not even attempt to analyze treatment of comparable employees or take into account surrounding circumstances, such as availability or desire to work overtime. "The Supreme Court has emphasized the importance of looking to the proper base group when making statistical comparisons and examining all of the surrounding facts and circumstances which create the statistics themselves." Cooper v. Southern Co., 390 F.3d 695, 717 (11th Cir. 2004) *overruled on other grounds*, Ash v. Tyson Foods, Inc., 546 U.S. 454, 456–457 (2006). There is insufficient evidence that all employees were interchangeable for purposes of the overtime needed. In fact the only evidence presented on the issue is from Bibb and shows the opposite; the factors determining who worked overtime included the job that needed to be performed, the past record of the employee regarding his willingness to work overtime (including whether that employee had declined overtime previously), and reliability and performance. Thus, Hunt's reliance on his "statistics" does not support a prima facie case of race discrimination in overtime assignments. See Burke–Fowler, 447 F.3d at 1325 ("holding employers liable for statistical imbalances per se is inconsistent with Title VII's plain language and statutory purpose[]") (quoting EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1276 (11th Cir. 2000)).

Further, Hunt has failed to present a genuine issue of material fact indicating that there is "a convincing mosaic" of circumstantial evidence raising a reasonable inference that Bibb discriminated. Smith, 644 F.3d at 1328.

### B. Title VII/Section 1981 Hostile Work Environment-Race[8]

With regard to Hunt's hostile work environment claim, this is not a class action and the Complaint does not allege "pattern and practice." Thus, Hunt (and the other plaintiffs) cannot rely upon and/or base this claim on any evidence of the other co-plaintiffs' experiences. See, e.g., Brown v. Berg Spiral Pipe Corp., 2011 WL 3610646, *14 (S.D. Ala. Aug. 17, 2011). Support for Hunt's discrimination case can only be based on evidence regarding *his* specific experiences his employment at Bibb or that which he became aware of while employed. This is because "[t]o rely on the evidence, each [plaintiff] must show that he *was aware* of those incidents at the relevant time he alleges the hostile work environment." See, e.g., Melton v. National Dairy, LLC, 705 F.Supp.2d 1303, 1342 (M.D. Ala. 2010) (citing Edwards Wallace Comm. College, 49 F.3d 1517, 1522 (11th Cir. 1995)) (emphasis in original). See also e.g., Head v. Pitts Enterp., Inc., 2010 WL 2773376, *8 (M.D. Ala. Jul. 14, 2010); McKenzie v. Citation Corp., LLC, 2007 WL 1424555, *13 (S.D. Ala. May 11, 2007). Courts in the Eleventh Circuit may consider statements not directed at a plaintiff and even hearsay statements, *so long as the plaintiff was aware of the statements at the time he was employed.* See, e.g., Yeomans v. Forster and Howell, Inc., 2010 WL 3716394, *5-6 (M.D. Ala. Sept. 10, 2010). Thus, despite Hunt's reference to and reliance upon "the mountain of evidence" provided in his co-plaintiffs affidavits (Doc. 49), the Court has only considered the evidence about which Hunt testified that he was aware while employed at Bibb for his hostile work environment claim.

---

[8] Hunt appears to have abandoned this claim altogether on summary judgment as he fails to substantively argue any claim other than "race discrimination" and presents no genuine issues of material fact to rebut Bibb's motion as to hostile work environment (the only reference to "hostile work environment" is placement of those 3 words in the conclusion of his Response. (Doc. 49 at 9)). Nevertheless, out of an abundance of caution, the Court addresses this claim.

Racial harassment is actionable where the conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. Freeman v. City of Riverdale, 330 Fed. Appx. 863, 865 (11th Cir. 2009). To establish a prima facie case of hostile work environment and/or racial harassment, the plaintiff must prove that: 1) he belongs to a protected group; 2) he has been subject to unwelcome harassment; 3) the harassment was based on a protected characteristic of the employee (such as race); 4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and 5) the employer is responsible for such environment under a theory of vicarious or direct liability. See, e.g., Reeves v. DSI Sec. Servs., Inc., 395 Fed. Appx. 544, 545–546 (11th Cir. 2010); McCann v. Tillman, 526 F .3d 1370, 1378 (11th Cir. 2008); Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002); Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).

Hunt's Title VII/Section 1981 specific hostile work environment allegations in the Complaint are unclear, as the complaint is framed combining all of plaintiffs' collective (and vague) allegations together. (Doc. 1 at 5-7). However, Hunt's deposition reveals his racial allegations against Bibb are based on the following: Zetino's comments about "his guys" or "his Mexican guys"; Zetino not fixing the air conditioner on Hunt's loader; Zetino threatening to fire Hunt if he lied about not damaging a wall with the loader and then not firing Reyes, a Hispanic, who admitted damaging the wall; Hunt not receiving a raise, and the Caucasian loader operator not helping Hunt unless Zetino made him.

The parties do not dispute that Hunt belongs to a protected group – African American. However, to be actionable as severe or pervasive, the harassment "must result in both an

14

environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] ... to be abusive." Miller, 277 F.3d at 1276 (internal citation and quotation marks omitted). In other words, the severe or pervasive element has an objective and subjective component. McCann, 526 F.3d at 1378. To determine the objective severity of the harassment, courts look at the totality of the circumstances and consider: 1) the frequency of the discriminatory conduct; 2) the severity of the conduct; 3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and 4) whether the conduct unreasonably interferes with an employee's job performance. Reeves, 395 Fed. Appx. at 546. See also Faragher v. City of Boca Raton, 524 U.S. 775, 787–788 (1998); Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir.1997) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). "The conduct is considered cumulatively instead of in isolation." Reeves, 395 Fed. Appx. at 546.

The evidence in this case is insufficient for a reasonable jury to find for Hunt on his hostile work environment claim. Specifically, even when viewing the facts in the light most favorable to him, a reasonable jury could not find that the purportedly harassing conduct was frequent and/or severe. As a result, as Hunt has failed to satisfy his prima facie case for Title VII/Section 1981 hostile work environment, the Court need not reach the fifth element (employer liability) and Bibb's motion for summary judgment on this claim is **GRANTED.**

### C. Retaliation[9]

To establish a prima facie case of retaliation, a plaintiff must prove that: 1) he engaged in statutorily protected activity; 2) he suffered a materially adverse action; and 3) there was a causal

---

[9] Hunt appears to have abandoned this claim altogether on summary judgment as he fails to substantively argue any claim other than "race discrimination" and presents no genuine issues of material fact to rebut Bibb's motion as to retaliation (the only reference to "retaliation" is placement of that 1 word in the conclusion of his Response (Doc. 49 at 9)). Nevertheless, out of an abundance of caution, the Court addresses this claim.

connection[10] between the protected activity and the materially adverse action.[11]  Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006); Nichols v. CSG Sys., Inc., 245 Fed. Appx. 937, 940 (11th Cir. 2007); Drago v. Jenne, 453 F.3d 1301, 1305 (11th Cir. 2006).

In the Complaint, Hunt alleges that Bibb violated Title VII/Section 1981 by retaliating against him for his engagement in protected activity.  (Doc. 1).  Hunt testified that he was retaliated against because he complained to another supervisor about Zetino having promised him a raise but not receiving one, and because he was getting "too much work."  (Doc. 39-4 at 19 (Dep. Hunt at 87-88)).  Hunt has submitted *no* evidence that he engaged in any statutorily protected activity and/or that Bibb took any adverse employment action against him *in response* to such activity.  Thus, Bibb's motion for summary judgment on Hunt's Title VII/Section 1981 retaliation claim is **GRANTED.**

## IV. Conclusion[12]

Accordingly, it is **ORDERED** that Defendant Bibb's Motion for Summary Judgment (Docs. 38-39) is **GRANTED.**

**DONE** and **ORDERED** this the 20th day of **May 2014.**

S/ Kristi K DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[10] To establish a causal connection, a plaintiff must show that the decision maker was aware of the protected conduct at the time of the adverse action. Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000); Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004).

[11] An action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, 548 U.S. at 68 (quotation omitted).

[12] The practice of filing motions to reconsider has become commonplace.  Considering the heightened burden that must be met for the court to reconsider, the court has found most such motions to be a waste of the court's and the parties' resources.