IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LAMONT WILLIAMS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 13-00241-KD-M |
| | ) | |
| BIBB COUNTY PROPERTIES, LLC, | ) | |
|     Defendant. | ) | |

## ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment on Williams' claims of race discrimination and retaliation (Docs. 34-35), Plaintiff's Response (Doc. 50), and Defendant's Reply (Doc. 53). For reasons stated infra, the motion is GRANTED.

### I. Findings of Fact[1]

Plaintiff Lamont Williams ("Williams") is an African-American who was employed by Defendant Bibb County Properties, LLC ("Bibb"), a sawmill and mulch processing plant in Grove Hill, Alabama. The Bibb plant was open Monday-Thursday for its normal hours of operation, but most every Friday the plant operated also as an "overtime" day. (Doc. 35-4 at 17 (Dep. Williams at 118); Doc. 35-2 at 1 at ¶5 (Aff. Zetino)).

On June 30, 2011, Bibb hired Williams; he first worked as a trim saw operator. (Doc. 35-4 at 2, 15 (Dep. Williams at 14-16, 108)). In July 2011, Williams was moved to be an edger

---

[1] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

1

operator. (Id. at 2-3, 15 (Dep. Williams at 16, 23, 108)). In August 2011, Bibb transferred one of its employees, Jose Victor Zetino ("Zetino"), who is Hispanic, to the Grove Hill plant, to be the Plant Manager. (Doc. 35-1 at 2 (Dep. Zetino at 6-7); Doc. 50-1 at 1). After he arrived at the plant, Zetino moved Williams from the edger to "the line" or "the green chain" (pulling lumber off the green chain with 4-6 employees stacking lumber). (Doc. 35-4 at 3-5, 15-16 (Dep. Williams at 24-27, 35, 108-109)). Williams perceived this as a "lower job." (Id.) Williams' main job was to stack lumber. (Id. at 4 (Dep. Williams at 26)).

Williams felt discriminated against because the African Americans always worked "the green chain" while only 2 of the Hispanics did. (Id. at 16 (Dep. Williams at 109, 111-112)). "[Y]ou going to only see blacks on the green chain. You ain't going to see no whites…he had…only one Mexican pulling board…it only going to be blacks on it pulling lumber." (Doc. 35-4 at 15 (Dep. Williams at 107-108)). See also (Doc. 50-1 at 16 at ¶6 (Aff. Williams)). However, Williams testified that he would *rather* work on the green chain than the forklift because when he worked the forklift, he worked with Zetino and had "to deal" with him. (Id. at 16 (Dep. Williams at 112)). Williams also explained that working on the green chain versus another job "did not make a difference" to Williams, but the green chain was "more comfortable" because there was less supervision. (Doc. 35-4 at 5 (Dep. Williams at 35-36)).

At some point, Zetino assigned Williams to be a forklift operator. In addition to his forklift duties, Zetino also put Williams in charge of quality control (the "QC" position) of the lumber being shipped, requiring Williams to ensure orders were being shipped without any defects in the boards and to transport the finish boards from the saws to packing the boards and

2

loading them for shipment. (Doc. 35-1 (Dep. Zetino at 14-16)). Williams experienced difficulties keeping up with the demands for these duties and he complained to Zetino, asking for help (additional manpower to accomplish the tasks). (Doc. 35-4 at 6, 22 (Dep. Williams at 51-52, 141)). Zetino sent him "guys that don't really know nothing[]" and told him to train the new "green" employees to help him. (Id.)

On March 27, 2012, Williams was terminated from the QC position because -- after having been warned by Zetino to always make sure "the cants" were right -- he allowed a shipment of boards to go out that had large cracks or "bad cants." Zetino told Williams that it was Williams' family or Zetino's and "it ain't going to be me." (Doc. 35-1 at 14-16; Doc. 35-3; Doc. 35-4 at 8 (Dep. Williams at 74-76)). Williams testified that he was terminated because he failed to complete work assignments. (Doc. 35-4 (Dep. Williams at 131-136)). However, Williams believes that Zetino would not have fired an Hispanic for the same reason.

As for racial discrimination, Williams testified that Zetino only made one comment about him being black after his brother (who is African American) started working out on the green chain. Zetino told Williams, who is "a lighter skinned black man[]" that Zetino thought Williams was white -- "he just made the comment and it didn't go no further than that[.]"[2] (Doc. 35-4 at 9, 14-15 (Dep. Williams at 78-79, 104-105); Doc. 50-1 at 16 at ¶3 (Aff. Williams)). Williams testified that Zetino was just "[a]n a[&##]hole" and cussed out a lot of employees: "he stayed into

---

[2] Williams testified that nothing more came of this comment, however, in his March 2014 affidavit, he alleges that Zetino seemed happy with him when he thought he was white but "his attitude changed once he learned I was black. He seemed to not like it when I took charge to get things done and tried to keep me from doing so." (Doc. 50-1 at 16 at ¶4). Williams also alleges in his affidavit that he feels he was allowed to do less additional overtime once Zetino learned he was black. (Id. at 16 at ¶5). This conclusory statement is not supported by the records submitted by Williams. Williams' last five (5) pay periods reflect, with the exception of one, his highest receipt of overtime.

3

it most with everybody…all the blacks I know, and some of the whites. Every now and then, he'll get on to some of the Mexicans[.]" (Doc. 35-4 (Dep. Williams at 80-81)). Nobody liked Zetino. (Id. at 10 (Dep. Williams at 81-84)). Williams believes Zetino was so tough on everyone because "he didn't like American people….he was trying to get back at the American people that hired….he knows usually when they hired Mexicans in they give them the toughest job….then they usually be the less paying people….I think he had something against that. That was my opinion[.]" (Id. (Dep. Williams at 84)). To Williams, everyone was treated badly by Zetino because he "was an a[&##]hole," not because of race. (Id. at 11 (Dep. Williams at 89)). As for the Hispanics, "he gave them hell, too. But they…all stuck together." (Id. (Dep. Williams at 90)). Williams never complained about discrimination at Bibb because he wanted to keep his job. (Doc. 35-4 at 16 (Dep. Williams at 110)).

Regarding overtime, while employed, Williams *regularly* worked overtime, by working on Fridays (an overtime day), on "most" Saturdays, and sometimes Monday-Thursday "after hours." See *supra*. Indeed, from June 30, 2011 to March 27, 2012, Williams worked 422.22 overtime hours. (Doc. 35-3 at 1 at ¶8 (Aff. Fournier)). Nevertheless, Williams alleges that he was given less overtime than the Hispanic employees because he was African American.

Specifically, while Williams *already* worked overtime on Fridays and most Saturdays,[3] he wanted *more* overtime work during the specific "after hours" overtime on Monday-Thursday.

---

[3] Williams found out that the Hispanics worked on Saturdays because "the mill be clean[]" or "you can see where they cut more lumber[.]" (Id. at 18 (Dep. Williams at 122)). Williams also had seen the Hispanics working when he drove by the plant on Saturdays. (Id.) However, Williams testified that "most of the Saturdays I would be there…I would…be there most of the Saturday[s] unless….it's…just a small portion…of the order left and…he don't need everybody [.]" (Id. at 17-18 (Dep. Williams at 119, 122-123)).

4

(Doc. 35-4 at 17, 20-21 (Dep. Williams at 118, 136-137)). Williams testified that he would end the day around 5/6 p.m. and Zetino would keep a group of employees around to clean up. (Id. at 11, 21 (Dep. Williams at 92, 137)). Williams would ask him to stay and Zetino would sometimes tell him "[n]o, I got my guys…my guys going to stay[]" and "my guys…say they can do it real faster and quicker and, you know, better[.]" (Id. at 11-12, 19, 21 (Dep. Williams at 92-94, 132, 137)). Williams asserts that he never turned down overtime unless he had to go out of town. (Doc. 35-4 at 17 (Dep. Williams at 120); Doc. 50-1 at 16 at ¶8 (Aff. Williams)).

On April 25, 2013, Williams sued Bibb for Title VII/Section 1981 violations for race discrimination (disparate treatment in connection with overtime opportunities), hostile work environment based on race, and retaliation -- claiming that Bibb discriminates against African-American in favor of Hispanic or Caucasian employees. (Doc. 1). The relief requested includes a declaratory judgment, a permanent injunction, back/front pay, punitive, compensatory damages and/or nominal damages, benefits, costs, fees and expenses. (Id. at 9).

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010). Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

5

evidence to support the fact.

*(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

*(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

*(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992) (internal citations and quotations omitted).

### III. Conclusions of Law

At the outset, the parties agree that Williams has exhausted his administrative remedies

and thus satisfied a condition precedent to filing suit. (Doc. 1 at 1-2 at ¶3; Doc. 5 at 1).[4]

Williams' disparate treatment, hostile work environment, and retaliation claims are based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Because Title VII and Section 1981 have the same requirements of proof, Williams' claims are analyzed under the same framework. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

### A. Disparate Treatment -Title VII/Section 1981 Race Discrimination

While the Complaint is not a model of clarity, it appears that Williams' race discrimination claim is based on being denied all the overtime he wanted, as he states in the complaint: "Hispanic and white counterparts were allowed to work substantially more overtime."[5] (Doc. 1 at 3 at ¶18). The Court considers this race discrimination claim as one for disparate treatment in connection with overtime opportunities through which Williams alleges he did not receive *as much* overtime as the Hispanic workers.

Williams may support his claims with direct evidence, circumstantial evidence, or statistical proof. Rioux v. City of Atlanta, Ga. 520 F.3d 1269, 1274 (11th Cir. 2008). Direct evidence of discrimination is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004). Specifically, direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption.

---

[4] The parties have not submitted the EEOC Charge. The Court thus presumes the parties are in agreement as to the propriety of the claims before the Court as they relate to the allegations contained in the Charge.

[5] Any race claims based on general treatment, reprimands, and disparate work conditions (a lack of air conditioning) (Doc. 1 at 3 at ¶17) appear to have been abandoned.

7

Taylor v. Runyon, 175 F.3d 861, 867 (11th Cir. 1999); Jones v. Bessemer Carraway Med. Ctr., 151 F.3d 1321, 1323 n. 11 (11th Cir. 1998); Burrell v. Board of Trustees of Ga. Military College, 125 F.3d 1390, 1393 (11th Cir. 1997). Direct evidence consists of "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [race]." Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008). As enunciated by this Court in Ferrell v. Masland Carpets, Inc., 97 F. Supp.2d 1114, 1123 (S.D. Ala. 2000):

> "It is a rare case, however, where there exists actual direct evidence of discrimination." *Copley v. Bax Global, Inc.,* 80 F.Supp.2d 1342, 1348 (S.D. Fla. 2000). The reason that "true" direct evidence is the exception rather than the rule is that courts have found "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate" as constituting direct evidence of discrimination. *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1223 (11th Cir.1993)… there must be a direct correlation between the adverse employment action and the discriminatory comment for such a statement to constitute direct evidence.

Moreover, evidence that merely suggests a discriminatory motive is, by definition, circumstantial evidence. Burrell, 125 F.3d at 1393-1394. "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." Standard 161 F.3d at 1330. "To be direct evidence, the remark must indicate that the employment decision in question was motivated by race." Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227-1228 (11th Cir. 2002).

Williams contends that he has direct evidence[6] of discrimination per the "mountain of

---

[6] Despite Williams' contention (Doc. 50 at 5-6), which relies upon and quotes Judge Tjoflat's opinion in Wright v. Corp, 187 F.3d 1287 (11th Cir. 1999), this Court does not agree that the Eleventh Circuit has adopted a broader definition of direct evidence based on a "preponderance" standard. Rather, the undersigned agrees with the conclusion in Ferrell, 97 F. Supp.2d at 1123:

8

evidence" in the co-plaintiff's affidavits. (Doc. 50 at 7). Williams' "direct evidence" consists of his and other co-plaintiffs' statements that they heard Zetino say "you guys" and my Hispanic or Mexican guys in reference to assigning overtime. However, this is not direct evidence of race discrimination. While Williams might prevail in convincing a jury that these comments indicated a preference for a certain group of Hispanic employees, such a conclusion can only be made by inference or presumption. As explained *supra*, direct evidence does not allow for inferential leaps,[7] and therefore, Williams has submitted no direct evidence.

Where there is only circumstantial evidence, as in this case, courts apply the framework in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u>, <u>e.g.</u>, <u>Chapman v. AI Transp</u>., 229 F.3d 1012, 1024 (11th Cir. 2000). Under <u>McDonnell Douglas</u>, the plaintiff has the initial burden of establishing a prima facie case of race discrimination. <u>Id</u>. Thus, the plaintiff must establish that: 1) he belongs to a racial minority; 2) he was subjected to adverse job action; 3) his employer treated similarly situated employees outside his classification more favorably; and 4) he was qualified to do the job. <u>Holifield v. Reno</u>, 115 F.3d 1555, 1561–1562 (11th Cir. 1997).

Further, in <u>Sims v. MVM, Inc</u>., 704 F.3d 1327, 1332-1333 (11th Cir. 2013), the Eleventh

---

The court disagrees. Judge Tjoflat's definition of direct evidence "is mere obiter dictum, as it was not necessary to the resolution of the case, and neither of the two other members of the panel joined that portion of the opinion." *Copley v. Bax Global, Inc.,* 80 F.Supp.2d 1342, 1348 (S.D.Fla.2000). Indeed, as the Copley court observes, the Eleventh Circuit has not since applied Judge Tjoflat's definition of direct evidence. *See Damon v. Fleming Supermarkets of Fla.,* 196 F.3d 1354, 1358–59 (11th Cir.1999). *See also Beaver v. Rayonier, Inc.*, 200 F.3d 723, 729–30 (11th Cir.1999). Accordingly, the court declines to adopt the definition of direct evidence propounded by Judge Tjoflat in Wright and urged by Ferrell in this case.

<u>See</u> <u>also</u> <u>East v. Clayton Cty., Ga</u>., 436 Fed. Appx. 904, 910 (11th Cir. 2011) (noting that even though no published opinion had overruled <u>Wright</u>, no published opinion directly applied that standard since <u>Wright</u> issued in 1999); <u>Kilpatrick v. Tyson Foods, Inc</u>., 268 Fed. Appx. 860, 862 (11th Cir. 2008) (noting that neither of the other 2 members of the panel joined in Judge Tjoflat's opinion and stating that "our case law, both before and since *Wright*, has used the standard…that direct evidence…means 'evidence which if believed, proves existence of fact in issue without inference or presumption'").

[7] *Accord* <u>Burrell</u>, 125 F.3d at 1393–1394 (a statement that merely suggests, but does not prove, a discriminatory motive is circumstantial evidence by definition).

9

Circuit clarified that the McDonnell Douglas framework is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case. See Smith, 644 F.3d at 1328. "The plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." Id. A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker. Id. See generally Hamilton v. Southland Christian School, Inc., 680 F.3d 1316, 1320 (11th Cir. 2012).

As previously stated, plaintiff must show that his employer treated similarly situated employees outside his classification more favorably. The employee identified as a comparator "must be similarly situated in all relevant respects." Wilson., 376 F.3d at 1091. See also e.g., Drake–Sims v. Burlington Coat Factory Warehouse of Ala., Inc., 330 Fed. Appx. 795, 803 (11th Cir. 2009). It is necessary that a comparator must be "nearly identical" to the plaintiff "to prevent courts from second-guessing a reasonable decision by the employer." Wilson, 376 F.3d at 1091.[8] See also e.g., Head v. Pitts Enterp , Inc., 2010 WL 2773376, *13 (M.D. Ala. Jul. 14, 2010); Drake–Sims, 380 Fed. Appx. at 803; Sylva–Kalonji v. Board of School Comm'rs of Mobile Cty., 2009 WL 1418808, *5–6 (S.D. Ala. May 20, 2009); Hill v. Emory Univ., 346 Fed. Appx. 390, 395 (11th Cir. 2009); Beard v. 84 Lumber Co., 206 Fed. Appx. 852, 857 (11th Cir. 2006) (finding the plaintiff and a proposed comparator had different numbers of years of experiences such that

---

[8] The Eleventh Circuit held in Cuevas v. American Exp. Travel Related Services Co., Inc., 256 Fed. Appx. 241, 243 (11th Cir. 2007) that "[a]lthough the 'nearly identical' misconduct requirement was called into question by Alexander v. Fulton County, Ga., 207 F.3d 1303, 1334 (11thCir. 2000), we are 'bound to follow *Maniccia's* 'nearly identical' standard rather than the standard articulated in *Alexander* because when a later panel decision contradicts an earlier one, the earlier panel decision controls.' "

they were not similarly situated in all relevant respects).

Williams' race discrimination claim is premised on the fact that during his employment with Bibb he was not allowed to work overtime *every* time he requested it while Hispanic employees did. The evidence indicates that between June 30, 2011 and March 27, 2012 (about 9 months of employment), Williams worked 422.22 hours of overtime. (Doc. 35-3 at 1 at ¶8 (Aff. Fournier)). Williams does not point to a specific comparative employee, but simply points to all Hispanic employees and summarily states that they were always allowed to work overtime. This is insufficient to sustain his burden. The court has no basis to even determine whether any of the Hispanics held similar jobs, much less whether they were similarly situated.

Williams primarily relies on "statistical data" in his attempt to establish a prima facie case of discrimination and presumably to show pre-text. In individual Title VII claims, statistical evidence is "relevant and important" but cannot alone sustain a case of individual discrimination. Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1131 (11th Cir. 1984). Williams' claims are not part of a class suit alleging a "pattern or practice" of discrimination.[9] However, "[e]ven

---

[9] To the extent this is a belated attempt by Williams to assert a disparate impact claim, as statistical disparity data is required in such claims, such attempt is improper. See, e.g., Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1314 (11th Cir. 2004) (explaining that the liberal pleading standard under Fed.R.Civ.P. 8(a)(2) does not afford plaintiffs with an opportunity to raise new claims at summary judgment); Huddleston v. Sunshine Mills, Inc., 965 F. Supp.2d 1298, 1310 (N.D. Ala. 2013) (concluding that the court would not consider a plaintiff's disparate impact theory of discrimination on summary judgment because he raised it for the first time in his response brief); Smith v. Horner, 839 F.2d 1530, 1534–35 (11th Cir.1988) (holding that the district court was not required to analyze the facts under a disparate impact theory when plaintiff made no mention of that theory in pre-trial and post-trial filings, and only barely alluded to the theory during trial); GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1258 n.27 (11th Cir. 2012) (providing "[i]t is well-settled in this circuit that a plaintiff may not amend the complaint through argument at the summary judgment phase of proceedings."); King v. ST Aerospace Mobile, Inc., 2013 WL 2635926, 8 (S.D. Ala. June 11, 2013) (noting that plaintiff cannot amend the pleading via summary judgment to add new causes of action); Godfrey v. Nationwide Vinyl Siding & Home Imp., LLC, 2012 WL 6569292, *12 n.23 (S.D. Ala. Dec. 14, 2012) ("Plaintiffs cannot use their summary judgment brief as a de facto amendment to their pleadings." See also Criner v. Texas—New Mexico Power Co., 470 Fed. Appx 364, 371 (5th Cir. 2012) ("[W]e hold that [Plaintiff] waived her disparate impact claims by presenting them for the first time in her response to a motion

though a suit seeks only individual relief for an individual instance of discrimination, and is not a "pattern or practice" suit by the government or a class action, the past history of [employment practices] is surely relevant information." Burns v. Thiokol Chemical Corp., 483 F.2d 300, 306 (5th Cir. 1973). As the Fifth Circuit explained over forty years ago, "'[i]n the problem of racial discrimination, statistics often tell much, and Courts listen.' Our wide experience with cases involving racial discrimination in education, employment, and other segments of society have led us to rely heavily in Title VII cases on the empirical data which show an employer's overall pattern of conduct in determining whether he has discriminated against particular individuals or a class as a whole." Id. at 305 (citation omitted). "Statistical evidence is an appropriate method for demonstrating both a prima facie case of discrimination and pretext…. Statistics…, however, without an analytic foundation, are virtually meaningless." Brown v. American Honda Motor Co., Inc., 939 F.2d 946, 952 (11th Cir. 1991).

Williams has submitted the employee data for Bibb County Properties over the course of one year, July 2011-2012. (Doc. 50-1 at 1-6). Williams also submitted summaries/tables, presumably prepared by Williams' counsel, that break down the employees by race and the number of overtime hours received. (Doc. 50-1 at 7-11). Counsel then provides his own analysis of the statistics, concluding that eighty percent (80%) of the Hispanic workers were in the top twenty-nine percent (29%) of average weekly overtime earners. This conclusion is virtually meaningless. Williams' statistical evidence did not even attempt to analyze treatment of comparable employees, or take into account surrounding circumstances such as availability or

---

for summary judgment.")

desire to work overtime. "The Supreme Court has emphasized the importance of looking to the proper base group when making statistical comparisons and examining all of the surrounding facts and circumstances which create the statistics themselves." Cooper v. Southern Co., 390 F.3d 695, 717 (11th Cir. 2004) *overruled on other grounds*, Ash v. Tyson Foods, Inc., 546 U.S. 454, 456–457 (2006). There is insufficient evidence that all employees were interchangeable for purposes of the overtime needed. In fact the only evidence presented on the issue is from Bibb and shows the opposite; the factors determining who worked overtime included the job that needed to be performed and the past record of the employee regarding his willingness to work overtime. Thus, Williams' reliance on his "statistics" does not support a prima facie case of race discrimination in overtime assignments. See Burke–Fowler, 447 F.3d at 1325 ("holding employers liable for statistical imbalances per se is inconsistent with Title VII's plain language and statutory purpose[]") (quoting EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1276 (11th Cir. 2000)).

Further, Williams has failed to present a genuine issue of material fact indicating that there is "a convincing mosaic" of circumstantial evidence raising a reasonable inference that Bibb discriminated. Smith, 644 F.3d at 1328.

### B. Title VII/Section 1981 Hostile Work Environment-Race[10]

With regard to Williams' hostile work environment claim, this is not a class action and the Complaint does not allege "pattern and practice." Thus, Williams (and the other plaintiffs)

---

[10] Williams appears to have abandoned this claim altogether on summary judgment as he fails to substantively argue any claim other than "race discrimination" and presents no genuine issues of material fact to rebut Bibb's motion as to hostile work environment (the only reference to "hostile work environment" is placement of those 3 words in the conclusion of his Response. (Doc. 50 at 8)). Nevertheless, out of an abundance of caution, the Court addresses this claim.

13

cannot rely upon and/or base this claim on any evidence of the other co-plaintiffs' experiences. See, e.g., Brown v. Berg Spiral Pipe Corp., 2011 WL 3610646, *14 (S.D. Ala. Aug. 17, 2011). Support for Williams' discrimination case can only be based on evidence regarding *his* specific experiences his employment at Bibb or that which he became aware of while employed. This is because "[t]o rely on the evidence, each [plaintiff] must show that he *was aware* of those incidents at the relevant time he alleges the hostile work environment." See, e.g., Melton v. National Dairy, LLC, 705 F.Supp.2d 1303, 1342 (M.D. Ala. 2010) (citing Edwards Wallace Comm. College, 49 F.3d 1517, 1522 (11th Cir. 1995)) (emphasis in original). See also e.g., Head v. Pitts Enterp., Inc., 2010 WL 2773376, *8 (M.D. Ala. Jul. 14, 2010); McKenzie v. Citation Corp., LLC, 2007 WL 1424555, *13 (S.D. Ala. May 11, 2007). Courts in the Eleventh Circuit may consider statements not directed at a plaintiff and even hearsay statements, *so long as the plaintiff was aware of the statements at the time he was employed.* See, e.g., Yeomans v. Forster and Howell, Inc., 2010 WL 3716394, *5-6 (M.D. Ala. Sept. 10, 2010). Thus, despite Williams' reference to and reliance upon "the mountain of evidence" provided in his co-plaintiffs affidavits (Doc. 50 at 7 at ¶16), the Court has only considered the evidence about which Williams testified that he was aware while employed at Bibb for his hostile work environment claim.

Racial harassment is actionable where the conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. Freeman v. City of Riverdale, 330 Fed. Appx. 863, 865 (11th Cir. 2009). To establish a prima facie case of hostile work environment and/or racial harassment, the plaintiff must prove that: 1) he belongs to a protected group; 2) he has been subject to unwelcome harassment; 3) the harassment was based on a protected characteristic of the employee (such as race); 4) the harassment was sufficiently

14

severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and 5) the employer is responsible for such environment under a theory of vicarious or direct liability. See, e.g., Reeves v. DSI Sec. Servs., Inc., 395 Fed. Appx. 544, 545–546 (11th Cir. 2010); McCann v. Tillman, 526 F .3d 1370, 1378 (11th Cir. 2008); Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002); Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).

Williams' Title VII/Section 1981 specific hostile work environment allegations in the Complaint are unclear, as the complaint is framed combining all of plaintiffs' collective (and vague) allegations together. (Doc. 1 at 5-7). However, Williams' deposition reveals his allegations against Bibb are: 1) he heard Zetino reference Hispanics as "his guys;" 2) Zetino originally thought he was white; 3) African Americans always worked the green chain while Hispanics rarely did; and 4) Zetino transferred him to different jobs/positions.[11]

The parties do not dispute that Williams belongs to a protected group – African American. However, to be actionable as severe or pervasive, the harassment "must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] ... to be abusive." Miller, 277 F.3d at 1276 (internal citation and quotation marks omitted). In other words, the severe or pervasive element has an objective and subjective component. McCann, 526 F.3d at 1378. To determine the objective severity of the harassment, courts look at the totality of the circumstances and consider: 1) the frequency of the

---

[11] Additionally, Williams asserted that Zetino did not know he was African American at some point during his employment; however, he has presented no evidence that Zetino's belief (at some point) that he was Caucasian was racial discrimination. Moreover, Zetino told Williams before he was fired that it was "your family or my family and it's not going to be my family"; however, he has presented no evidence that this was connected to Williams' race or was racial discrimination (versus job security and not wanting to be fired for mistakes).

15

discriminatory conduct; 2) the severity of the conduct; 3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and 4) whether the conduct unreasonably interferes with an employee's job performance. Reeves, 395 Fed. Appx. at 546. See also Faragher v. City of Boca Raton, 524 U.S. 775, 787–788 (1998); Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir.1997) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). "The conduct is considered cumulatively instead of in isolation." Reeves, 395 Fed. Appx. at 546. It is debatable whether Williams has presented enough evidence to even establish that subjectively he felt harassed based on his race. However, when viewing the facts in the light most favorable to him, a reasonable jury could not find that the purportedly harassing conduct was frequent and/or severe. As a result, as Williams has failed to satisfy his prima facie case for Title VII/Section 1981 hostile work environment, the Court need not reach the fifth element (employer liability) and Bibb's motion for summary judgment on this claim is **GRANTED.**

## C. Retaliation[12]

To establish a prima facie case of retaliation, a plaintiff must prove that: 1) he engaged in statutorily protected activity; 2) he suffered a materially adverse action; and 3) there was a causal connection[13] between the protected activity and the materially adverse action.[14] Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006); Nichols v. CSG Sys., Inc., 245 Fed. Appx. 937, 940 (11th Cir. 2007); Drago v. Jenne, 453 F.3d 1301, 1305 (11th Cir. 2006).

---

[12] Williams appears to have abandoned this claim altogether on summary judgment as he fails to substantively argue any claim other than "race discrimination" and presents no genuine issues of material fact to rebut Bibb's motion as to retaliation (the only reference to "retaliation" is placement of that 1 word in the conclusion of his Response (Doc. 50 at 8)). Nevertheless, out of an abundance of caution, the Court addresses this claim.

[13] To establish a causal connection, a plaintiff must show that the decision maker was aware of the protected conduct at the time of the adverse action. Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000); Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004).

[14] An action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, 548 U.S. at 68 (quotation omitted).

In the Complaint, Williams alleges that Bibb violated Title VII/Section 1981 by retaliating against him for his engagement in protected activity. (Doc. 1). Williams has submitted *no* evidence of any statutorily protected activity during his employment at Bibb, or that Bibb took any adverse employment action against him *in response* to him engaging in any such activity. Thus, Bibb's motion for summary judgment on Williams' Title VII/Section 1981 retaliation claim is **GRANTED.**

IV.     **Conclusion**[15]

Accordingly, it is **ORDERED** that Defendant Bibb's Motion for Summary Judgment (Docs. 34-35) is **GRANTED.**

**DONE** and **ORDERED** this the 20th day of **May 2014.**

> S/Kristi K. DuBose
> **KRISTI K. DuBOSE**
> **UNITED STATES DISTRICT JUDGE**

---

[15] The practice of filing motions to reconsider has become commonplace. Considering the heightened burden that must be met for the court to reconsider, the court has found most such motions to be a waste of the court's and the parties' resources.

17