# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| RONNIE HARRIS, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>BIBB COUNTY PROPERTIES, LLC, )<br>    Defendant. ) | CIVIL ACTION NO. 13-00241-KD-M |

## ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment on Harris' claim of race discrimination and retaliation (Docs. 41-42), Plaintiff's Response (Doc. 51), and Defendant's Reply (Doc. 53). For reasons state *infra,* the motion is GRANTED.

**I.  Findings of Fact[1]**

Plaintiff Ronnie Harris ("Harris") is an African-American who was briefly employed by Defendant Bibb County Properties, LLC ("Bibb"), a sawmill and mulch processing plant in Grove Hill, Alabama. In August 2011, Bibb transferred one of its employees, Jose Victor Zetino ("Zetino"), who is Hispanic, to the Grove Hill plant to be the Plant Manager. (Doc. 42-1 at 2 (Dep. Zetino at 6-7); Doc. 51-1 at 1).

Subsequently, Zetino hired Harris on Wednesday, March 7, 2012, as the plant's only on-site electrician and to perform maintenance at the plant. (Doc. 42-2 at 2-3, 5, 7 (Dep. Harris at 24-28, 42, 49)). Harris worked Wednesday-Friday, but did not work over the first weekend. (Id. at 5 (Dep. Harris at 42)). On Monday, March 12, 2012, Zetino told Harris that he had incorrectly

---

[1] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

1

installed a coil in a band saw control panel box at the plant (it had stopped working), instructing him to fix the problem. (Id. at 4, 5, 6, 8 (Dep. Harris at 37-41, 42, 47-48, 61)). Harris explained that the problem was that Zetino had placed 480 volts into a 110 volt transformer and keeping it that way would damage the saw motor. (Id.) Zetino told Harris to fix the saw as he instructed: "[y]ou just do what the f[*#@] I tell you to do. I'm your boss[]" as "[w]e just need to make it through the day." (Id. at 4 (Dep. Harris at 40)). Harris fixed the saw as instructed. When the saw became operational it blew the motor. Zetino blamed Harris and fired him on March 12, 2012. Zetino stated, "you don't know what the f[*#@] you doing. You're not an electrician. Come on get your tools[]" and "I think this job is too much for you….Get your tools. You're fired." (Doc. 42-2 at 4-6 (Dep. Harris at 40-43, 48)). Zetino said nothing to Harris about his race. Rather, "[h]e just said…the job was too big for me. I'm too young for this job...." (Id. at 5 (Dep. Harris at 42-43)). Harris testified that he felt mistreated by Zetino because Zetino acted like he knew "a lot more" about electricity than Harris when he did not. (Id. at 6 (Dep. Harris at 47-48)).

During Harris' employment, there were no Caucasian or Hispanic electricians at the plant (and no other electricians in general). (Id. at 7 (Dep. Harris at 49)). During the five (5) days Harris was employed, he heard Zetino refer to Hispanic employees as "my guys" on three (3) of those days. Harris stated that Zetino "felt like his guys was better workers[]" and "[h]e wouldn't really talk to you. He wouldn't talk directly to you[]" but "if he felt like it was something his guys could do and … like they could do it faster or better than you, he'll put his guys on it. That's just how he was." (Id. at 8 (Dep. Harris at 61-62)). Harris admitted there were no other employees

2

that could perform the job he was hired to perform. (Id. (Dep. Harris at 62-63)). Nevertheless, Harris believes that how Zetino treats people has "a lot to do" with them being black. (Doc. 42-2 at 6 (Dep. Harris at 47)).

Regarding overtime, Harris contends that he was denied the opportunity to work overtime during the first weekend he was employed (March 10-11, 2012), and that someone later told him that Zetino did not allow any African American men to work at the Grove Hill plant during the March 17-18, 2012 weekend, after he was fired. (Id. at 8 (Dep. Harris at 41, 63-64)). However, Harris simultaneously testified that "Big E," an African American employee, "works mostly all weekends." (Id. at 8-9 (Dep. Harris at 64-65)). Regardless, Harris testified that he asked Zetino if he could work overtime during his first weekend, and Zetino told him no ("I'm not going to need you, or We're not going to run[]"). However, when Harris reported to work that Monday, he learned that others had worked over the weekend (but not maintenance or electricians). (Id. at 9 (Dep. Harris at 65-66)).

On April 25, 2013, Harris sued Bibb for Title VII/Section 1981 violations for race discrimination (disparate treatment in connection with overtime opportunities), hostile work environment based on race, and retaliation -- claiming that Bibb discriminates against African-American in favor of Hispanic or Caucasian employees. (Doc. 1). The relief requested includes a declaratory judgment, a permanent injunction, back/front pay, punitive, compensatory damages and/or nominal damages, benefits, costs, fees and expenses. (Id. at 9).

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.

R. CIV. P. 56(a) (Dec. 2010). Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead,

4

the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992) (internal citations and quotations omitted).

## III. Conclusions of Law

At the outset, the parties agree that Harris has exhausted his administrative remedies and thus satisfied a condition precedent to filing suit. (Doc. 1 at 1-2 at ¶3; Doc. 5 at 1).[2]

Harris' disparate treatment, hostile work environment, and retaliation claims are based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Because Title VII and Section 1981 have the same requirements of proof, Harris' claims are analyzed under the same framework. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

### A. Disparate Treatment -Title VII/Section 1981 Race Discrimination

While the Complaint is not a model of clarity, it appears that Harris' race discrimination claim is based on being denied overtime as he states in the complaint that "Hispanic and white counterparts were allowed to work substantially more overtime."[3] (Doc. 1 at 3 at ¶18). The Court considers this race discrimination claim as one for disparate treatment in connection with overtime opportunities.

Harris may support his claims with direct evidence, circumstantial evidence, or statistical proof. Rioux v. City of Atlanta, Ga. 520 F.3d 1269, 1274 (11th Cir. 2008). Direct evidence of

---

[2] The parties have not submitted the EEOC Charge. The Court thus presumes the parties are in agreement as to the propriety of the claims before the Court as they relate to the allegations contained in the Charge.

[3] Any race claims based on general treatment, reprimands, and disparate work conditions (a lack of air conditioning) (Doc. 1 at 3 at ¶17) appear to have been abandoned.

5

discrimination is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004). Specifically, direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption. Taylor v. Runyon, 175 F.3d 861, 867 (11th Cir. 1999); Jones v. Bessemer Carraway Med. Ctr., 151 F.3d 1321, 1323 n. 11 (11th Cir. 1998); Burrell v. Board of Trustees of Ga. Military College, 125 F.3d 1390, 1393 (11th Cir. 1997). Direct evidence consists of "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [race]." Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008). As enunciated by this Court in Ferrell v. Masland Carpets, Inc., 97 F. Supp.2d 1114, 1123 (S.D. Ala. 2000):

> "It is a rare case, however, where there exists actual direct evidence of discrimination." *Copley v. Bax Global, Inc.,* 80 F.Supp.2d 1342, 1348 (S.D. Fla. 2000). The reason that "true" direct evidence is the exception rather than the rule is that courts have found "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate" as constituting direct evidence of discrimination. *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1223 (11th Cir.1993)… there must be a direct correlation between the adverse employment action and the discriminatory comment for such a statement to constitute direct evidence.

Moreover, evidence that merely suggests a discriminatory motive is, by definition, circumstantial evidence. Burrell v. Bd. of Trs. of Ga. Military Coll., 125 F.3d 1390, 1393–1394 (11th Cir. 1997). "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." Standard 161 F.3d at 1330. "To be direct evidence, the remark must indicate that the employment decision in question was motivated by race." Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227–1228 (11th Cir. 2002).

6

While Harris contends that he has direct evidence[4] of discrimination per the "mountain of evidence" in the co-plaintiff's affidavits (Doc. 51 at 7), the Court disagrees. Harris' "direct evidence" consists of evidence submitted by other co-plaintiffs that indicates they heard Zetino, say "you guys" or "my Hispanic guys" and Harris' experience of hearing Zetino say "you guys" on three occasions. (Doc. 51 at 7 at ¶16). However, this is not direct evidence of race discrimination. While Harris might prevail in convincing a jury that "you guys" indicated a preference for a certain group of Hispanic employees, such a conclusion can only be made by inference or presumption. As explained *supra*, direct evidence does not allow for inferential leaps.[5]

Where there is only circumstantial evidence, as in this case, courts apply the framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000). Under McDonnell Douglas, the plaintiff has the initial

---

[4] Despite Harris' contention (Doc. 51 at 5-6), which relies upon and quotes Judge Tjoflat's opinion in Wright v. Southland Corp, 187 F.3d 1287 (11th Cir.1999), this Court does not agree that the Eleventh Circuit has adopted a broader definition of direct evidence based on a "preponderance" standard. Rather, the undersigned agrees with the conclusion in Ferrell v. Masland Carpets, Inc., 97 F. Supp.2d 1114, 1123 (S.D. Ala. 2000):

> The court disagrees. Judge Tjoflat's definition of direct evidence "is mere obiter dictum, as it was not necessary to the resolution of the case, and neither of the two other members of the panel joined that portion of the opinion." *Copley v. Bax Global, Inc.,* 80 F.Supp.2d 1342, 1348 (S.D.Fla.2000). Indeed, as the Copley court observes, the Eleventh Circuit has not since applied Judge Tjoflat's definition of direct evidence. *See Damon v. Fleming Supermarkets of Fla.,* 196 F.3d 1354, 1358–59 (11th Cir.1999). *See also Beaver v. Rayonier, Inc.*, 200 F.3d 723, 729–30 (11th Cir.1999). Accordingly, the court declines to adopt the definition of direct evidence propounded by Judge Tjoflat in Wright and urged by Ferrell in this case.

See also East v. Clayton Cty., Ga., 436 Fed. Appx. 904, 910 (11th Cir. 2011) (noting that even though no published opinion had overruled Wright, no published opinion directly applied that standard since Wright issued in 1999); Kilpatrick v. Tyson Foods, Inc., 268 Fed. Appx. 860, 862 (11th Cir. 2008) (noting that neither of the other 2 members of the panel joined in Judge Tjoflat's opinion and stating that "our case law, both before and since Wright, has used the standard…that direct evidence…means 'evidence which if believed, proves existence of fact in issue without inference or presumption'").

[5] *Accord* Burrell, 125 F.3d at 1393–1394 (a statement that merely suggests, but does not prove, a discriminatory motive is circumstantial evidence by definition).

7

burden of establishing a prima facie case of race discrimination. Id. Thus, the plaintiff must establish that: 1) he belongs to a racial minority; 2) he was subjected to adverse job action; 3) his employer treated similarly situated employees outside his classification more favorably; and 4) he was qualified to do the job. Holifield v. Reno, 115 F.3d 1555, 1561–1562 (11th Cir. 1997).

Further, in Sims v. MVM, Inc., 704 F.3d 1327, 1332-1333 (11th Cir. 2013), the Eleventh Circuit clarified that the McDonnell Douglas framework is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case. See Smith, 644 F.3d at 1328. "The plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." Id. A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker. Id. See generally Hamilton, 680 F.3d at 1320.

As previously stated, plaintiff must show that his employer treated similarly situated employees outside his classification more favorably. The employee identified as a comparator "must be similarly situated in all relevant respects." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004). See also e.g., Drake–Sims v. Burlington Coat Factory Warehouse of Ala., Inc., 330 Fed. Appx. 795, 803 (11th Cir. 2009). It is necessary that a comparator must be "nearly identical" to the plaintiff "to prevent courts from second-guessing a reasonable decision by the employer." Wilson, 376 F.3d at 1091.[6] See also e.g., Head v. Pitts Enterp , Inc., 2010 WL

---

[6] The Eleventh Circuit held in Cuevas v. American Exp. Travel Related Services Co., Inc., 256 Fed. Appx. 241, 243 (11th Cir. 2007) that "[a]lthough the 'nearly identical' misconduct requirement was called into question by Alexander v. Fulton County, Ga., 207 F.3d 1303, 1334 (11th Cir. 2000), we are 'bound to follow Maniccia's 'nearly identical' standard rather than the standard articulated in Alexander because when a later panel decision contradicts

8

2773376, *13 (M.D.Ala. Jul. 14, 2010); Drake–Sims, 380 Fed. Appx. at 803; Sylva–Kalonji v. Board of School Comm'rs of Mobile Cty., 2009 WL 1418808, *5–6 (S.D. Ala. May 20, 2009); Hill v. Emory Univ., 346 Fed. Appx. 390, 395 (11th Cir. 2009); Beard v. 84 Lumber Co., 206 Fed. Appx. 852, 857 (11th Cir. 2006) (finding the plaintiff and a proposed comparator had different numbers of years of experiences such that they were not similarly situated in all relevant respects).

Harris' race discrimination claim is premised on the fact that during the five days of his employment with Bibb he was refused overtime work on one weekend due to his race, African-American, while Hispanic and Caucasian employees received overtime. Harris relies on "statistical data" in his attempt to establish a prima facie case of discrimination and presumably to show pre-text. In individual Title VII claims, statistical evidence is "relevant and important" but cannot alone sustain a case of individual discrimination. Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1131 (11th Cir. 1984). Harris' claims are not part of a class suit alleging a "pattern or practice" of discrimination.[7] However, "[e]ven though a suit seeks only individual

---

an earlier one, the earlier panel decision controls.' "

[7] To the extent this is a belated attempt by Harris to assert a disparate impact claim, as statistical disparity data is required in such claims, such attempt is improper. See, e.g., Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1314 (11th Cir. 2004) (explaining that the liberal pleading standard under Fed.R.Civ.P. 8(a)(2) does not afford plaintiffs with an opportunity to raise new claims at summary judgment); Huddleston v. Sunshine Mills, Inc., 965 F. Supp.2d 1298, 1310 (N.D. Ala. 2013) (concluding that the court would not consider a plaintiff's disparate impact theory of discrimination on summary judgment because he raised it for the first time in his response brief); Smith v. Horner, 839 F.2d 1530, 1534–35 (11th Cir.1988) (holding that the district court was not required to analyze the facts under a disparate impact theory when plaintiff made no mention of that theory in pre-trial and post-trial filings, and only barely alluded to the theory during trial); GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1258 n.27 (11th Cir. 2012) (providing "[i]t is well-settled in this circuit that a plaintiff may not amend the complaint through argument at the summary judgment phase of proceedings."); King v. ST Aerospace Mobile, Inc., 2013 WL 2635926, 8 (S.D. Ala. June 11, 2013) (noting that plaintiff cannot amend the pleading via summary judgment to add new causes of action); Godfrey v. Nationwide Vinyl Siding & Home Imp., LLC, 2012 WL 6569292, *12 n.23 (S.D. Ala. Dec. 14, 2012) ("Plaintiffs cannot use their summary judgment brief as a de facto amendment to their pleadings." See also Criner v. Texas—New Mexico Power Co., 470 F. App'x 364, 371 (5th Cir. 2012) ("[W]e hold that [Plaintiff]

relief for an individual instance of discrimination, and is not a "pattern or practice" suit by the government or a class action, the past history of [employment practices] is surely relevant information." Burns v. Thiokol Chemical Corp., 483 F.2d 300, 306 (5th Cir. 1973). As the Fifth Circuit explained over forty years ago, "'[i]n the problem of racial discrimination, statistics often tell much, and Courts listen.' Our wide experience with cases involving racial discrimination in education, employment, and other segments of society have led us to rely heavily in Title VII cases on the empirical data which show an employer's overall pattern of conduct in determining whether he has discriminated against particular individuals or a class as a whole." Burns at 305 (citation omitted). "Statistical evidence is an appropriate method for demonstrating both a prima facie case of discrimination and pretext…. Statistics [], however, without an analytic foundation, are virtually meaningless." Brown v. American Honda Motor Co., Inc., 939 F.2d 946, 952 (11th Cir. 1991).

Harris has submitted the employee data for Bibb County Properties over the course of one year, July 2011-2012. (Doc. 51-1 at 1-6) Harris also submitted summaries/tables, presumably prepared by Harris' counsel, that break down the employees by race and the number of overtime hours received. (Doc. 51-1 at 7-11). Counsel then provides his own analysis of the statistics, concluding that eighty percent (80%) of the Hispanic workers were in the top twenty-nine percent (29%) of average weekly overtime earners. This conclusion is virtually meaningless. Harris' statistical evidence did not even attempt to analyze treatment of comparable employees or take into account surrounding circumstances such as availability or

---

waived her disparate impact claims by presenting them for the first time in her response to a motion for summary judgment.")

desire to work overtime. "The Supreme Court has emphasized the importance of looking to the proper base group when making statistical comparisons and examining all of the surrounding facts and circumstances which create the statistics themselves." Cooper v. Southern Co., 390 F.3d 695, 717 (11th Cir. 2004). There is insufficient evidence that all employees were interchangeable for purposes of the overtime needed. In fact the only evidence presented on the issue is from Bibb and shows the opposite; the factors determining who worked overtime included the job that needed to be performed and the past record of the employee regarding his willingness to work overtime. Considering the brevity of Harris' employment and the lack of any evidence of an employee with a comparable job that received overtime pay, Harris' reliance on these statistics does not support a prima facie case of race discrimination in overtime assignments. See Burke–Fowler v. Orange County, Fla., 447 F.3d 1319, 1325 (11th Cir. 2006) ("[H]olding employers liable for statistical imbalances per se is inconsistent with Title VII's plain language and statutory purpose[]") (quoting EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1276 (11th Cir. 2000)).

Moreover, even if the "statistical data" and the Zetino's reference to "my guys" could establish a prima facie case, Bibb has articulated a legitimate non-discriminatory reason for Harris' not receiving overtime assignments and for his termination: Zetino did not think Harris' was qualified to perform the job. If the employer articulates a legitimate, nondiscriminatory reason for its actions, the plaintiff must then show that the employer's alleged reason was a pretext for unlawful discrimination. Crawford v. City of Fairburn, 482 F.3d 1305, 1308 (11th Cir. 2007).

To meet his burden of showing a pretext under McDonnell Douglas, the plaintiff must rebut all legitimate non-discriminatory reasons that the employer proffers for the adverse action. Id. A plaintiff can accomplish this by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation, Brooks v. County Comm'n of Jefferson Cty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006), and/or by "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence[,]" Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1308 (11th Cir. 2012). Additionally, the plaintiff may produce evidence that "permits the jury to reasonably disbelieve the employer's proffered reason." Steger v. Gen. Elec. Co., 318 F.3d 1066, 1079 (11th Cir. 2003). "But a reason cannot ... be 'a pretext *for discrimination* 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis in original). The plaintiff "must meet [the] reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman, 229 F.3d at 1030. The court's inquiry, ultimately, "is limited to whether the employer gave an honest explanation of its behavior." Id. A plaintiff's showing that the employer was simply incorrect in its decision is insufficient: if the employer honestly believed that the employee engaged in misconduct, even if mistaken, no discrimination exists. Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991).

Harris has wholly failed to rebut Bibb's explanation for terminating Harris and failing to

assign him overtime.[8] Statistics alone is insufficient. Further, Harris has failed to present a genuine issue of material fact indicating that there is "a convincing mosaic" of circumstantial evidence raising a reasonable inference that Bibb discriminated. Smith, 644 F.3d at 1328.

**B.  Title VII/Section 1981 Hostile Work Environment-Race**[9]

With regard to Harris' hostile work environment claim, this is not a class action and the Complaint does not allege "pattern and practice"; thus, Harris (and the other plaintiffs) cannot rely upon and/or base this claim on any evidence of the other co-plaintiffs' experiences. See, e.g., Brown v. Berg Sprial Pipe Corp., 2011 WL 3610646, *14 (S.D. Ala. Aug. 17, 2011). Support for Harris' discrimination case can only be based on evidence regarding *his* specific experiences during the 5 days he was employed at Bibb or that which he became aware of while employed. This is because "[t]o rely on the evidence, each [plaintiff] must show that he *was aware* of those incidents at the relevant time he alleges the hostile work environment." See, e.g., Melton v. National Dairy, LLC, 705 F.Supp.2d 1303, 1342 (M.D. Ala. 2010) (citing Edwards Wallace Comm. College, 49 F.3d 1517, 1522 (11th Cir. 1995)) (emphasis in original). See also e.g., Head v. Pitts Enterp., Inc., 2010 WL 2773376, *8 (M.D. Ala. Jul. 14, 2010); McKenzie v. Citation Corp., LLC, 2007 WL 1424555, *13 (S.D. Ala. May 11, 2007). Courts in the Eleventh Circuit may consider statements not directed at a plaintiff and even hearsay statements, *so long as the plaintiff was aware of the statements at the time he was employed.* See, e.g., Yeomans v. Forster and Howell, Inc., 2010 WL 3716394, *5-6 (M.D. Ala. Sept. 10, 2010). Thus, despite Harris'

---

[8] The court notes that plaintiff's evidence indicates that Harris received 5.5 overtime hours.
[9] Harris appears to have abandoned this claim altogether on summary judgment as he fails to substantivelyargue any claim other than "race discrimination" and presents no genuine issues of material fact to rebut Bibb's motion as to hostile work environment (the only reference to "hostile work environment" is placement of those 3 words in the conclusion of his Response. (Doc. 51 at 8)). Nevertheless, out of an abundance of caution, the Court addresses this claim.

13

reference to and reliance upon "the mountain of evidence" provided in his co-plaintiffs affidavits (Doc. 51 at 7 at ¶16), the Court has only considered the evidence about which Harris testified that he was aware while employed at Bibb for his hostile work environment claim.

Racial harassment is actionable where the conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. Freeman v. City of Riverdale, 330 Fed. Appx. 863, 865 (11th Cir. 2009). To establish a prima facie case of hostile work environment and/or racial harassment, the plaintiff must prove that: 1) he belongs to a protected group; 2) he has been subject to unwelcome harassment; 3) the harassment was based on a protected characteristic of the employee (such as race); 4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and 5) the employer is responsible for such environment under a theory of vicarious or direct liability. See, e.g., Reeves v. DSI Sec. Servs., Inc., 395 Fed. Appx. 544, 545–546 (11th Cir. 2010); McCann v. Tillman, 526 F .3d 1370, 1378 (11th Cir. 2008); Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002); Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).

Harris' Title VII/Section 1981 specific hostile work environment allegations in the Complaint are unclear, as the complaint is framed combining all of plaintiffs' collective (and vague) allegations together. (Doc. 1 at 5-7). However, his deposition reveals that Harris' allegations consist *only* of his claim that during the 5 days of employment at Bibb, he heard Zetino refer to Hispanic employees as "his guys" on 3 days.

The parties do not dispute that Harris belongs to a protected group – African American. However, to be actionable as severe or pervasive, the harassment "must result in both an

environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] ... to be abusive." Miller, 277 F.3d at 1276 (internal citation and quotation marks omitted). In other words, the severe or pervasive element has an objective and subjective component. McCann, 526 F.3d at 1378. To determine the objective severity of the harassment, courts look at the totality of the circumstances and consider: 1) the frequency of the discriminatory conduct; 2) the severity of the conduct; 3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and 4) whether the conduct unreasonably interferes with an employee's job performance. Reeves, 395 Fed. Appx. at 546. See also Faragher v. City of Boca Raton, 524 U.S. 775, 787–788 (1998); Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir.1997) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). "The conduct is considered cumulatively instead of in isolation." Reeves, 395 Fed. Appx. at 546.

The evidence in this case is insufficient for a reasonable jury to find that the purported harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment. There is not sufficient evidence that Harris even subjectively perceived his work environment to be hostile. Harris has not testified that he felt harassed by overhearing the "his guys" comment by Zetino, or on any other basis. There is no evidence that the "his guys" comment was even directed to Harris, much less was hostile to him based on his race. Even assuming Harris had presented such evidence, when viewing the facts in the light most favorable to him, a reasonable jury could not find that the purportedly harassing conduct was frequent and/or severe.

As a result, Harris has failed to satisfy his prima facie case for Title VII/Section 1981 hostile work environment, the Court need not reach the fifth element (employer liability) and

Bibb's motion for summary judgment on this claim is **GRANTED.**

## C. Retaliation[10]

To establish a prima facie case of retaliation, a plaintiff must prove that: 1) he engaged in statutorily protected activity; 2) he suffered a materially adverse action; and 3) there was a causal connection[11] between the protected activity and the materially adverse action.[12] Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006); Nichols v. CSG Sys., Inc., 245 Fed. Appx. 937, 940 (11th Cir. 2007); Drago v. Jenne, 453 F.3d 1301, 1305 (11th Cir. 2006).

In the Complaint, Harris alleges that Bibb violated Title VII/Section 1981 because he was constructively discharged on the basis of his race in retaliation for his engagement in protected activity. (Doc. 1 at 3 at ¶14). Harris has submitted *no* evidence of any statutorily protected activity during the 5 days he was employed at Bibb, or that Bibb took any adverse employment action against him *in response* to him engaging in any such activity. Thus, Bibb's motion for summary judgment on Harris' Title VII/Section 1981 retaliation (including constructive discharge) claim is **GRANTED.**

## IV. Conclusion[13]

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment (Docs.

---

[10] Harris appears to have abandoned this claim altogether on summary judgment as he fails to substantively argue any claim other than "race discrimination" and presents no genuine issues of material fact to rebut Bibb's motion as to retaliation (the only reference to "retaliation" is placement of that 1 word in the conclusion of his Response (Doc. 51 at 8)). Nevertheless, out of an abundance of caution, the Court addresses this claim.

[11] To establish a causal connection, a plaintiff must show that the decision maker was aware of the protected conduct at the time of the adverse action. Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000); Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004).

[12] An action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, 548 U.S. at 68 (quotation omitted).

[13] The practice of filing motions to reconsider has become commonplace. Considering the heightened burden that must be met for the court to reconsider, the court has found most such motions to be a waste of the court's and the parties' resources.

41, 42) is **GRANTED.**

    **DONE** and **ORDERED** this the 20th day of **May 2014.**

                                               S/Kristi K. DuBose
                                               **KRISTI K. DuBOSE**
                                               **UNITED STATES DISTRICT JUDGE**