# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JOHN HUDSON, )<br>　　Plaintiff, )<br> )<br>v. )　CIVIL ACTION NO. 13-00241-KD-M<br> )<br>BIBB COUNTY PROPERTIES, LLC, )<br>　　Defendant. ) | |

## ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment on Hudson's claims of race discrimination and retaliation (Docs. 36-37), Plaintiff's Response (Doc. 48), and Defendant's Reply (Doc. 53). For reasons stated infra, the motion is GRANTED.

**I.　Findings of Fact[1]**

Plaintiff John Hudson ("Hudson") is an African-American who was employed by Defendant Bibb County Properties, LLC ("Bibb"), a sawmill and mulch processing plant in Grove Hill, Alabama. The Bibb plant was open Monday-Thursday as its normal hours of operation, but most every Friday the plant also operated as an overtime day. (Doc. 37-1 at 5 (Dep. Zetino at 17); Doc. 37-2 at 1 (Aff. Zetino)).

Hudson began his employment with Bibb on April 18, 2011; he was hired to operate the trim saw. (Doc. 37-4 at 2 (Dep. Hudson at 30-32)). A few months later, Hudson was moved to debarker, and he worked stacking lumber on "the green chain" when needed. (Id. at 3-4 (Dep. Hudson at 33-35, 49-50)). Hudson worked Monday through Friday (which includes overtime, as

---

[1] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

1

Friday was an overtime day). (Id. at 4 (Dep. Hudson at 51-52)).

In August 2011, Bibb transferred one of its employees, Jose Victor Zetino ("Zetino"), who is Hispanic, to the Grove Hill plant, to be the Plant Manager. (Doc. 37-1 at 2 (Dep. Zetino at 6-7)). Zetino was tasked with increasing production. (Id. at 3, 12 (Dep. Zetino at 10, 45); Doc. 37-2 at 1 (Aff. Zetino)). As Plant Manger, Zetino determined when/whether the plant would operate overtime, on Friday and Saturday, departing from the Monday-Thursday normally scheduled days of operation, as well as assigned overtime in general. (Doc. 37-2 at 1 (Aff. Zetino)). According to Zetino, performance and reliability are the two biggest criteria in deciding who gets overtime. (Doc. 37-1 at 17 (Dep. Zetino at 83-84)).

While employed, Hudson worked 481.81 overtime hours. (Doc. 37-3 at 1 (Aff. Fournier)). On occasion, Hudson refused overtime opportunities in order to pick up his children. (Doc. 37-4 (Dep. Hudson at 129-130)).

At an unknown date, Hudson resigned from employment with Bibb because he was not receiving enough overtime and did not receive a raise. (Id. (Dep. Hudson at 130-131)). He told Zetino he was leaving to make more money elsewhere. (Id.)

As to hostile work environment[2] based on his race, Hudson alleges that the debarker's air conditioning did not work properly and Zetino refused to get a new air conditioner, the Hispanics spoke Spanish (not English), Zetino cursed him out twice when he requested water, and Zetino made him (and only African Americans) unload wood from a moving conveyor belt. (Doc. 37-4

---

[2] Bibb references that Hudson alleges that a Hispanic coworker, Reyes, made sexual comments towards him on at least two occasions, but Zetino took no action against Reyes and laughed at Hudson's complaint. (Doc. 37 at 8-9; Doc. 37-4 (Dep. Hudson at 71-72)). However, there are no gender or sex based discrimination claims in this case, and moreover, Hudson does not allege this on summary judgment. As such, this allegation and any related claim is simply not before the Court. Additionally, Bibb references that Hudson complained of not receiving a pay raise. (Doc. 37 at 7). However, there are no disparate treatment concerning discriminatory pay claims in this case. As such, this allegation and any related claim is also not before the Court.

(Dep. Hudson at 76, 91-92, 100-101, 106, 146)).  Hudson adds that if the debarker broke down, he would be sent to work on "the green chain" (the most physically difficult job at the plant) and that over time, he noticed that the African American workers were always sent to the green chain when their machines broke down while Caucasian and Hispanic workers were given a break when their machines broke down.  (Doc. 48-1 at 12).  However, Hudson testified that Zetino never said anything to him about his race or made any racial threats towards him, and he never heard Zetino make any inappropriate comments to other workers.  (Id. at 8 (Dep. Hudson at 77-78)).

In his Affidavit, (Doc. 48-1 at 12), Hudson alleges that Zetino did not let him work overtime as much as he wanted.  Zetino would tell him "my guys have got it" and "every now and then" Zetino would say "my Hispanic guys."  Zetino told Hudson he did not mean anything bad by such phrasing but never explained what he meant.  (Id.)  Hudson summarily alleges that the Hispanics who received overtime did not have any special skills that the other coworkers lacked.  Also, Hudson states that after some of the weekends during which Hudson was denied overtime, "I saw that my debarker machine had been run by someone else over the weekend."  (Id.)

Concerning retaliation, Hudson alleges that Bibb retaliated against him after he told Zetino that he was discriminating against other African American employees due to their race.  Specifically, he told Zetino that he should give all the employees "who deserved one" a pay raise, he and other employees were placed "off work" for a couple of days.  (Doc. 37-4 at 10-11 (Dep. Hudson at 91-92, 99-102)).  Hudson never told Zetino that he was discriminating against him. (Id. (Dep. Hudson at 91)).  Hudson does not recall when he made these complaints to Zetino. (Id. at 10, 12 (Dep. Hudson at 92, 101)).

3

On April 25, 2013, Hudson sued Bibb for Title VII/Section 1981 violations for race discrimination (disparate treatment in connection with overtime opportunities), hostile work environment based on race, and retaliation -- claiming that Bibb discriminates against African-Americans in favor of Hispanic or Caucasian employees. (Doc. 1). The relief requested includes a declaratory judgment, a permanent injunction, back/front pay, punitive, compensatory damages and/or nominal damages, benefits, costs, fees and expenses. (Id. at 9).

## II.  Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010). Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010). The party seeking summary judgment bears the "initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992) (internal citations and quotations omitted).

## III. Conclusions of Law

At the outset, the parties agree that Hudson has exhausted his administrative remedies and thus satisfied a condition precedent to filing suit. (Doc. 1 at 1-2 at ¶3; Doc. 5 at 1).[3]

Hudson's disparate treatment, hostile work environment, and retaliation claims are based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Because Title VII and Section 1981 have the same requirements of proof, Hudson's claims are analyzed under the same framework. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

---

[3] The parties have not submitted the EEOC Charge. The Court thus presumes the parties are in agreement as to the propriety of the claims before the Court as they relate to the allegations contained in the Charge.

### A. Disparate Treatment -Title VII/Section 1981 Race Discrimination

While the Complaint is not a model of clarity, it appears that Hudson's race discrimination claim is based on being denied all the overtime he wanted, as he states in the complaint: "Hispanic and white counterparts were allowed to work substantially more overtime."[4] (Doc. 1 at 3 at ¶18). The Court considers this race discrimination claim as one for disparate treatment in connection with overtime assignments.

Hudson may support his claims with direct evidence, circumstantial evidence, or statistical proof. Rioux v. City of Atlanta, Ga. 520 F.3d 1269, 1274 (11th Cir. 2008). Direct evidence of discrimination is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004). Specifically, direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption. Taylor v. Runyon, 175 F.3d 861, 867 (11th Cir. 1999); Jones v. Bessemer Carraway Med. Ctr., 151 F.3d 1321, 1323 n. 11 (11th Cir. 1998); Burrell v. Board of Trustees of Ga. Military College, 125 F.3d 1390, 1393 (11th Cir. 1997). Direct evidence consists of "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [race]." Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008). As enunciated by this Court in Ferrell v. Masland Carpets, Inc., 97 F. Supp.2d 1114, 1123 (S.D. Ala. 2000):

> "It is a rare case, however, where there exists actual direct evidence of discrimination." *Copley v. Bax Global, Inc.,* 80 F.Supp.2d 1342, 1348 (S.D. Fla. 2000). The reason that

---

[4] Any race claims based on general treatment and reprimands (Doc. 1 at 3 at ¶17) appear to have been abandoned.

6

"true" direct evidence is the exception rather than the rule is that courts have found "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate" as constituting direct evidence of discrimination. *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1223 (11th Cir.1993)… there must be a direct correlation between the adverse employment action and the discriminatory comment for such a statement to constitute direct evidence.

Moreover, evidence that merely suggests a discriminatory motive is, by definition, circumstantial evidence. Burrell, 125 F.3d at 1393-1394. "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." Standard 161 F.3d at 1330. "To be direct evidence, the remark must indicate that the employment decision in question was motivated by race." Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227-1228 (11th Cir. 2002).

Hudson contends that he has direct evidence[5] of discrimination per the "mountain of evidence" in the co-plaintiff's affidavits. (Doc. 48 at 7). Hudson's "direct evidence" consists of his and other co-plaintiffs' statements that they heard Zetino say "you guys" and my Hispanic or

---

[5] Despite Hudson's contention (Doc. 48 at 5-6), which relies upon and quotes Judge Tjoflat's opinion in Wright v. Corp, 187 F.3d 1287 (11th Cir. 1999), this Court does not agree that the Eleventh Circuit has adopted a broader definition of direct evidence based on a "preponderance" standard. Rather, the undersigned agrees with the conclusion in Ferrell, 97 F. Supp.2d at 1123:

> The court disagrees. Judge Tjoflat's definition of direct evidence "is mere obiter dictum, as it was not necessary to the resolution of the case, and neither of the two other members of the panel joined that portion of the opinion." *Copley v. Bax Global, Inc.,* 80 F.Supp.2d 1342, 1348 (S.D.Fla.2000). Indeed, as the Copley court observes, the Eleventh Circuit has not since applied Judge Tjoflat's definition of direct evidence. *See Damon v. Fleming Supermarkets of Fla.,* 196 F.3d 1354, 1358–59 (11th Cir.1999). *See also Beaver v. Rayonier, Inc.*, 200 F.3d 723, 729–30 (11th Cir.1999). Accordingly, the court declines to adopt the definition of direct evidence propounded by Judge Tjoflat in Wright and urged by Ferrell in this case.

See also East v. Clayton Cty., Ga., 436 Fed. Appx. 904, 910 (11th Cir. 2011) (noting that even though no published opinion had overruled Wright, no published opinion directly applied that standard since Wright issued in 1999); Kilpatrick v. Tyson Foods, Inc., 268 Fed. Appx. 860, 862 (11th Cir. 2008) (noting that neither of the other 2 members of the panel joined in Judge Tjoflat's opinion and stating that "our case law, both before and since *Wright*, has used the standard…that direct evidence…means 'evidence which if believed, proves existence of fact in issue without inference or presumption'").

7

Mexican guys. (Doc. 48 at 7; Doc. 48-1 at 12-19)). This is not direct evidence of race discrimination. While Hudson might prevail in convincing a jury that these comments indicate a preference for a certain group of Hispanic employees, such a conclusion can only be made by inference or presumption. As explained *supra*, direct evidence does not allow for inferential leaps.[6]

Where there is only circumstantial evidence, as in this case, courts apply the framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000). Under McDonnell Douglas, the plaintiff has the initial burden of establishing a prima facie case of race discrimination. Id. Thus, the plaintiff must establish that: 1) he belongs to a racial minority; 2) he was subjected to adverse job action; 3) his employer treated similarly situated employees outside his classification more favorably; and 4) he was qualified to do the job. Holifield v. Reno, 115 F.3d 1555, 1561–1562 (11th Cir. 1997).

Further, in Sims v. MVM, Inc., 704 F.3d 1327, 1332-1333 (11th Cir. 2013), the Eleventh Circuit clarified that the McDonnell Douglas framework is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case. See Smith, 644 F.3d at 1328. "The plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." Id. A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker. Id. See generally Hamilton v. Southland Christian School, Inc., 680 F.3d 1316, 1320 (11th Cir. 2012).

---

[6] *Accord* Burrell, 125 F.3d at 1393–1394 (a statement that merely suggests, but does not prove, a discriminatory motive is circumstantial evidence by definition).

8

As previously stated, plaintiff must show that his employer treated similarly situated employees outside his classification more favorably. The employee identified as a comparator "must be similarly situated in all relevant respects." Wilson., 376 F.3d at 1091. See also e.g., Drake–Sims v. Burlington Coat Factory Warehouse of Ala., Inc., 330 Fed. Appx. 795, 803 (11th Cir. 2009). It is necessary that a comparator must be "nearly identical" to the plaintiff "to prevent courts from second-guessing a reasonable decision by the employer." Wilson, 376 F.3d at 1091.[7] See also e.g., Head v. Pitts Enterp , Inc., 2010 WL 2773376, *13 (M.D. Ala. Jul. 14, 2010); Drake–Sims, 380 Fed. Appx. at 803; Sylva–Kalonji v. Board of School Comm'rs of Mobile Cty., 2009 WL 1418808, *5–6 (S.D. Ala. May 20, 2009); Hill v. Emory Univ., 346 Fed. Appx. 390, 395 (11th Cir. 2009); Beard v. 84 Lumber Co., 206 Fed. Appx. 852, 857 (11th Cir. 2006) (finding the plaintiff and a proposed comparator had different numbers of years of experiences such that they were not similarly situated in all relevant respects).

Hudson's race discrimination claim is premised on the fact that he did not receive as much overtime work as he wanted. The evidence indicates that between April 18, 2011 and his resignation (date is unknown)[8] but no later than July 2012 (per the evidence), Hudson worked 481.81 hours of overtime. (Doc. 36-3 at 12 at ¶7 (Aff. Fournier)). Hudson does not point to a specific comparative employee, but simply points to all Hispanic employees and says that on one occasion someone ran his machine while overtime was being performed. The implication being

---

[7] The Eleventh Circuit held in Cuevas v. American Exp. Travel Related Services Co., Inc., 256 Fed. Appx. 241, 243 (11th Cir. 2007) that "[a]lthough the 'nearly identical' misconduct requirement was called into question by Alexander v. Fulton County, Ga., 207 F.3d 1303, 1334 (11th Cir. 2000), we are 'bound to follow *Maniccia's* 'nearly identical' standard rather than the standard articulated in *Alexander* because when a later panel decision contradicts an earlier one, the earlier panel decision controls.' "

[8] There is no evidence of record as to when Hudson resigned. Additionally, the evidence submitted by Hudson indicates that he was still "active" with regards to employment as of July 2012.

that it was an employee with a similar skill that was allowed to work overtime when he was not. This is insufficient to sustain his burden. The court has no basis for comparison to determine whether the employee that worked was similarly situated or even whether he was outside Hudson's race classification.

Hudson primarily relies on "statistical data" in his attempt to establish a prima facie case of discrimination and presumably to show pre-text. In individual Title VII claims, statistical evidence is "relevant and important" but cannot alone sustain a case of individual discrimination. Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1131 (11th Cir. 1984). Hudson's claims are not part of a class suit alleging a "pattern or practice" of discrimination.[9] However, "[e]ven though a suit seeks only individual relief for an individual instance of discrimination, and is not a "pattern or practice" suit by the government or a class action, the past history of [employment practices] is surely relevant information." Burns v. Thiokol Chemical Corp., 483 F.2d 300, 306 (5th Cir. 1973). As the Fifth Circuit explained over forty years ago, "'[i]n the problem of racial discrimination, statistics often tell much, and Courts listen.' Our wide experience with

---

[9] To the extent this is a belated attempt by Hudson to assert a disparate impact claim, as statistical disparity data is required in such claims, such attempt is improper. See, e.g., Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1314 (11th Cir. 2004) (explaining that the liberal pleading standard under Fed.R.Civ.P. 8(a)(2) does not afford plaintiffs with an opportunity to raise new claims at summary judgment); Huddleston v. Sunshine Mills, Inc., 965 F. Supp.2d 1298, 1310 (N.D. Ala. 2013) (concluding that the court would not consider a plaintiff's disparate impact theory of discrimination on summary judgment because he raised it for the first time in his response brief); Smith v. Horner, 839 F.2d 1530, 1534–1535 (11th Cir.1988) (holding that the district court was not required to analyze the facts under a disparate impact theory when plaintiff made no mention of that theory in pre-trial and post-trial filings, and only barely alluded to the theory during trial); GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1258 n.27 (11th Cir. 2012) (providing "[i]t is well-settled in this circuit that a plaintiff may not amend the complaint through argument at the summary judgment phase of proceedings."); King v. ST Aerospace Mobile, Inc., 2013 WL 2635926, *8 (S.D. Ala. Jun. 11, 2013) (noting that plaintiff cannot amend the pleading via summary judgment to add new causes of action); Godfrey v. Nationwide Vinyl Siding & Home Imp., LLC, 2012 WL 6569292, *12 n.23 (S.D. Ala. Dec. 14, 2012) ("Plaintiffs cannot use their summary judgment brief as a de facto amendment to their pleadings." See also Criner v. Texas—New Mexico Power Co., 470 Fed. Appx 364, 371 (5th Cir. 2012) ("[W]e hold that [Plaintiff] waived her disparate impact claims by presenting them for the first time in her response to a motion for summary judgment.")

10

cases involving racial discrimination in education, employment, and other segments of society have led us to rely heavily in Title VII cases on the empirical data which show an employer's overall pattern of conduct in determining whether he has discriminated against particular individuals or a class as a whole." Id. at 305 (citation omitted). "Statistical evidence is an appropriate method for demonstrating both a prima facie case of discrimination and pretext…. Statistics…, however, without an analytic foundation, are virtually meaningless." Brown v. American Honda Motor Co., Inc., 939 F.2d 946, 952 (11th Cir. 1991).

Hudson has submitted the employee data for Bibb County Properties over the course of one year, July 2011-2012. (Doc. 48-1 at 1-6). Hudson also submitted summaries/tables, presumably prepared by Hudson's counsel, that break down the employees by race and the number of overtime hours received. (Doc. 48-1 at 7-11). Counsel then provides his own analysis of the statistics, concluding that eighty percent (80%) of the Hispanic workers were in the top twenty-nine percent (29%) of average weekly overtime earners. This conclusion is virtually meaningless. Hudson's statistical evidence did not even attempt to analyze treatment of comparable employees, or take into account surrounding circumstances such as availability or desire to work overtime. "The Supreme Court has emphasized the importance of looking to the proper base group when making statistical comparisons and examining all of the surrounding facts and circumstances which create the statistics themselves." Cooper v. Southern Co., 390 F.3d 695, 717 (11th Cir. 2004) *overruled on other grounds*, Ash v. Tyson Foods, Inc., 546 U.S. 454, 456–457 (2006). There is insufficient evidence that all employees were interchangeable for purposes of the overtime needed. In fact the only evidence presented on the issue is from Bibb

11

and shows the opposite; the factors determining who worked overtime included the job that needed to be performed, the past record of the employee regarding his willingness to work overtime (including whether that employee had declined overtime previously), and reliability and performance. Thus, Hudson's reliance on these statistics does not support a prima facie case of race discrimination in overtime assignments. See Burke–Fowler, 447 F.3d at 1325 ("holding employers liable for statistical imbalances per se is inconsistent with Title VII's plain language and statutory purpose[]") (quoting EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1276 (11th Cir. 2000)).

Further, Hudson has failed to present a genuine issue of material fact indicating that there is "a convincing mosaic" of circumstantial evidence raising a reasonable inference that Bibb discriminated. Smith, 644 F.3d at 1328.

### B.     Title VII/Section 1981 Hostile Work Environment-Race[10]

With regard to Hudson's hostile work environment claim, this is not a class action and the Complaint does not allege "pattern and practice." Thus, Hudson (and the other plaintiffs) cannot rely upon and/or base this claim on any evidence of the other co-plaintiffs' experiences. See, e.g., Brown v. Berg Spiral Pipe Corp., 2011 WL 3610646, *14 (S.D. Ala. Aug. 17, 2011). Support for Hudson's discrimination case can only be based on evidence regarding *his* specific experiences his employment at Bibb or that which he became aware of while employed. This is because "[t]o rely on the evidence, each [plaintiff] must show that he *was aware* of those

---

[10] Hudson appears to have abandoned this claim altogether on summary judgment as he fails to substantively argue any claim other than "race discrimination" and presents no genuine issues of material fact to rebut Bibb's motion as to hostile work environment (the only reference to "hostile work environment" is placement of those 3 words in the conclusion of his Response. (Doc. 48 at 9)). Nevertheless, out of an abundance of caution, the Court addresses this claim.

incidents at the relevant time he alleges the hostile work environment." See, e.g., Melton v. National Dairy, LLC, 705 F.Supp.2d 1303, 1342 (M.D. Ala. 2010) (citing Edwards Wallace Comm. College, 49 F.3d 1517, 1522 (11th Cir. 1995)) (emphasis in original). See also e.g., Head v. Pitts Enterp., Inc., 2010 WL 2773376, *8 (M.D. Ala. Jul. 14, 2010); McKenzie v. Citation Corp., LLC, 2007 WL 1424555, *13 (S.D. Ala. May 11, 2007). Courts in the Eleventh Circuit may consider statements not directed at a plaintiff and even hearsay statements, *so long as the plaintiff was aware of the statements at the time he was employed.* See, e.g., Yeomans v. Forster and Howell, Inc., 2010 WL 3716394, *5-6 (M.D. Ala. Sept. 10, 2010). Thus, despite Hudson's reference to and reliance upon "the mountain of evidence" provided in his co-plaintiffs affidavits (Doc. 48 at 7 at ¶16), the Court has only considered the evidence about which Hudson testified that he was aware while employed at Bibb for his hostile work environment claim.

Racial harassment is actionable where the conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. Freeman v. City of Riverdale, 330 Fed. Appx. 863, 865 (11th Cir. 2009). To establish a prima facie case of hostile work environment and/or racial harassment, the plaintiff must prove that: 1) he belongs to a protected group; 2) he has been subject to unwelcome harassment; 3) the harassment was based on a protected characteristic of the employee (such as race); 4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and 5) the employer is responsible for such environment under a theory of vicarious or direct liability. See, e.g., Reeves v. DSI Sec. Servs., Inc., 395 Fed. Appx. 544, 545–546 (11th Cir. 2010); McCann v. Tillman, 526 F .3d 1370, 1378 (11th Cir. 2008); Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002); Mendoza v. Borden, Inc.,

13

195 F.3d 1238, 1245 (11th Cir. 1999).

Hudson's Title VII/Section 1981 specific hostile work environment allegations in the Complaint are unclear, as the complaint is framed combining all of plaintiffs' collective (and vague) allegations together. (Doc. 1 at 5-7). However, Hudson's deposition and affidavit reveal his allegations against Bibb are as follows: 1) the debarker's air conditioning did not work properly yet Zetino refused to get a new air conditioner; 2) the Hispanics spoke Spanish (not English); 3) Zetino cursed him out twice when he requested water; 4) Zetino made him (and other African Americans) unload wood from a moving conveyor belt; 5) if the debarker broke, he would be sent to work on "the green chain" (the most physically difficult job at the plant) and African American workers were always sent to the green chain when their machines broke down while Caucasian and Hispanic workers were given a break; and 6) Zetino used the phrase "my guys" or "my Hispanic guys" for the Hispanic workers he assigned more overtime to, instead of Hudson.

The parties do not dispute that Hudson belongs to a protected group – African American. However, to be actionable as severe or pervasive, the harassment "must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] ... to be abusive." Miller, 277 F.3d at 1276 (internal citation and quotation marks omitted). In other words, the severe or pervasive element has an objective and subjective component. McCann, 526 F.3d at 1378. To determine the objective severity of the harassment, courts look at the totality of the circumstances and consider: 1) the frequency of the discriminatory conduct; 2) the severity of the conduct; 3) whether the conduct is physically

threatening or humiliating, or a mere offensive utterance; and 4) whether the conduct unreasonably interferes with an employee's job performance. Reeves, 395 Fed. Appx. at 546. See also Faragher v. City of Boca Raton, 524 U.S. 775, 787–788 (1998); Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir.1997) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). "The conduct is considered cumulatively instead of in isolation." Reeves, 395 Fed. Appx. at 546. When viewing the facts in the light most favorable to him, a reasonable jury could not find that the purportedly harassing conduct was frequent and/or severe. As a result, as Hudson has failed to satisfy his prima facie case for Title VII/Section 1981 hostile work environment, the Court need not reach the fifth element (employer liability) and Bibb's motion for summary judgment on this claim is **GRANTED.**

    C.    **Retaliation**[11]

"To establish a prima facie case of retaliation, a plaintiff must prove that: 1) he engaged in statutorily protected activity;[12] 2) he suffered a materially adverse action; and 3) there was a causal[13] connection between the protected activity and the materially adverse action. Burlington

---

[11] Hudson appears to have abandoned this claim altogether on summary judgment as he fails to substantively argue any claim other than "race discrimination" and presents no genuine issues of material fact to rebut Bibb's motion as to retaliation (the only reference to "retaliation" is placement of that 1 word in the conclusion of his Response (Doc. 48 at 9)). Nevertheless, out of an abundance of caution, the Court addresses this claim.

[12] A statutorily protected activity is opposing an unlawful employment practice, or making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII/Section 1981's retaliation provision. EEOC v. Total Sys. Servs. Inc., 221 F.3d 1171, 1174 (11th Cir. 2000) (referencing 42 U.S.C. § 2000e-3(a)). A plaintiff can show that he engaged in a protected activity if he proves that he had a subjective good faith belief, as well as an objective, reasonable belief that his employer engaged in an unlawful employment practice when he opposed that practice. Dixon v. The Hallmark Cos., 627 F.3d 849, 857 (11th Cir. 2010).

[13] This requires a plaintiff to show that the decision-maker was aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated. Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000). Additionally, one way to show causation is not wholly unrelated is by showing a close temporal proximity between the protected activity and the adverse action against the plaintiff. Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004). Temporal proximity, without more, must be "very close." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (quotation marks omitted).

15

Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006); Nichols v. CSG Sys., Inc., 245 Fed. Appx. 937, 940 (11th Cir. 2007); Drago v. Jenne, 453 F.3d 1301, 1305 (11th Cir. 2006). An adverse employment action in the retaliation context is an act that would "dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington, 548 U.S. 53, 64. Thus, it is not limited to retaliatory actions that affect the terms and conditions of employment. Id. at 68. However, the "materiality of the alleged adverse action is judged by an objective standard." Foshee v. Ascension Health–IS, Inc., 384 Fed. Appx. 890, 892 (11th Cir. 2010).

In the Complaint, Hudson alleges that Bibb violated Title VII/Section 1981 by retaliating against him for engaging in protected activity – as he opposed Bibb's unlawful employment practices. (Doc. 1). Specifically, Hudson's retaliation allegations and evidence indicate that he, along with others, were placed off work within the same week he requested pay raises for himself and for those workers "who deserved one." (Doc. 37-4 at 10-11 (Dep. Hudson at 91-92, 99-102)). According to Hudson, after he complained to Zetino, "[h]e let me stay off a couple of days because he said didn't have nothing to do but he did[,]" (Id. at 11 (Dep. Hudson at 100)), and within that same week "blacks and white[]" workers were put off work (including Hudson), but "[a]ll the Mexicans work[ed]." (Id. at 12 (Dep. Hudson at 101)).

At the outset, Hudson's retaliation claim is one for opposition to an unlawful employment practice, (i.e., failure to give pay raises) within the meaning of 42 U.S.C. § 2000e-3(a). The belief required by this type of retaliation claim has a subjective and objective component:

> … a plaintiff can establish a prima facie case of retaliation under the opposition clause of Title VII if he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices. It is critical to emphasize that a plaintiff's

burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

Little v. United Technologies, Carrier Transicold Division, 103 F.3d 956, 960 (11th Cir. 1997).

Hudson has failed to address his claim of retaliation in his response. The court has found no evidence to support a finding that Hudson's belief, that blacks were denied pay raises based on their race, was objectively reasonable. It follows then, that Hudson has failed to establish a prima facie case and his retaliation claim fails as a matter of law. As such, Bibb's motion for summary judgment on Hudson's Title VII/Section 1981 retaliation claim is **GRANTED.**

## IV.   Conclusion[14]

Accordingly, it is **ORDERED** that Defendant Bibb's Motion for Summary Judgment (Docs. 36-37) is **GRANTED.**

**DONE** and **ORDERED** this the **21st** day of **May 2014.**

       s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[14] The practice of filing motions to reconsider has become commonplace. Considering the heightened burden that must be met for the court to reconsider, the court has found most such motions to be a waste of the court's and the parties' resources.

17